LARAWAY v. WILLIAMS.

1. DRAINS—UNLAWFUL CONSTRUCTION — ACTION — TRESPASS —CERTIORARI.

In an action against a county drain commissioner and the sureties on his official bond for damages to plaintiffs' land by the unlawful construction of a drain, *held*, that certiorari was not their exclusive remedy, but that an action of trespass could be maintained.

2. SAME—COUNTY DRAIN COMMISSIONER—LIABILITY.

Where plaintiffs' land was omitted from the survey bill and the description of a drain about to be constructed, and no release of right of way, as required by section 4883, 1 Comp. Laws 1915, was ever obtained from plaintiffs nor any proceedings taken in the probate court to determine the necessity for such drain or for the taking

of private property for the use and benefit of the public, and the just compensation to be paid therefor, and in the construction of such drain a watercourse on plaintiffs' land was destroyed, the drain commissioner was liable for the damages to plaintiffs' freehold in an action of trespass.

3. SAME—PAYMENT OF TAX—WAIVER.

The payment under protest by plaintiffs of the tax assessed against their land for the construction of said drain did not operate as a waiver by them of any damages they were entitled to recover by reason of the trespass.

4. SAME—DAMAGES—EXCESSIVE VERDICT—GREAT WEIGHT OF EVIDENCE.

Where the evidence as to plaintiffs' damage was contradictory, but a half score of witnesses, including the purchaser of the land from plaintiffs, testified that the damages for the destruction of the watercourse far exceeded the amount awarded, a verdict for $575, *held*, not excessive, nor against the great weight of the evidence.

Error to Calhoun; North, J. Submitted April 17, 1918. (Docket No. 114.) Decided June 3, 1918.

Case by Jerome V. Laraway and another against Lewis Chester Williams and others for trespass. Judgment for plaintiffs. Defendants bring error. Affirmed.

*Stewart & Jacobs* and *James Cleary*, for appellants.

*Howard W. Cavanagh* and *John W. Bailey*, for appellees.

STONE, J. This case grows out of an alleged trespass on lands owned by the plaintiffs as tenants by the entireties, and described as the north half of the southeast quarter of section 34 in the township of Battle Creek, claimed to have been committed by the defendant Williams, as drain commissioner of the county of Calhoun. The other defendants are the sureties on defendant Williams' official bond. The alleged trespass arose in the construction of the so-called Fuller drain, which deepened and straightened a

stream called Minges brook, which ran across the northwest corner of plaintiffs' said land for a distance of from 8 to 10 rods. Defendant Williams was drain commissioner for said county from January 1, 1910, to January 1, 1916.

On the 10th day of January, 1912, an application was filed with defendant Williams, as such commissioner, for the locating and establishing of the said drain, which traversed lands in the townships of Leroy and Battle Creek. After the required notices to the clerks of the respective townships, and on the 21st day of May, 1912, the township boards of the two townships made an order determining the necessity for said drain. The drain was then surveyed, a survey bill prepared and filed, and on March 31, 1913, defendant Williams, as commissioner, filed his first order of determination. On December 15, 1914, he filed his final order of determination, and on December 31, 1914, he let the contract for the construction of the drain. Thereafter the benefits were apportioned, and while the land of the plaintiffs was in the assessment district, and was assessed for benefits in the sum of $72 which they paid under protest; by a mistake the land of the plaintiffs was omitted from the survey bill and the description of the drain. No release of right of way, as required by section 4883, 1 Comp. Laws 1915, was ever obtained or asked for from the plaintiffs, nor was any proceeding taken in the probate court of the county for the appointment of special commissioners to determine the necessity for such drain, or for the taking of private property for the use and benefit of the public, and the just compensation to be paid therefor. Minges brook was a natural stream of running water, which had for many years supplied water along its course to people who were the owners of property through which said stream ran; and the plaintiffs had the use and enjoyment of the same in the watering of their stock, etc., and it is claimed that

the same was of great value, and enhanced the value of their said farm.

The particular matters complained of by the plaintiffs are that said Williams, as such commissioner, removed from the said premises the use and enjoyment of such watercourse by causing said drain to be laid out and dredged to a great depth at a distance of about 30 feet from the west line of said premises, the right of way of which drain, as laid out and constructed, was described as 100 feet in width, being 50 feet on either side of the center thereof, 20 feet of which right of way was on the said premises of the plaintiffs, and that by reason of the digging and construction of said drain, large quantities of earth were dumped on plaintiffs' premises destroying the fence upon the line, and entirely destroying and removing the said watercourse from the said premises of the plaintiffs, and absolutely drying the same up, and destroying its use and benefit to the plaintiffs, notwithstanding the fact that no right of way had ever been obtained from the plaintiffs, nor permission in any way given the said defendant Williams to come upon the said land, or pile large quantities of dirt thereon, or remove the natural water supply therefrom.

The drain stakes being on the center line of said drain, were not on plaintiffs' premises, but west thereof, and it was the claim of the plaintiffs that when they learned of the location of said drain they applied to the said defendant Williams, and that he advised them that he would not change the course of said Minges brook, but would leave the supply of water upon their premises, and would change the course of said drain so as to leave the water supply on the premises of the plaintiffs. But that notwithstanding such promise and agreement said drain was unlawfully and wilfully dredged and constructed 30 feet west of the plaintiffs' premises, to a great depth, so ·

that the water from Minges brook was attracted thereto, and drained therein, leaving the premises of the plaintiffs barren of any water, and causing them great damage.

The plea was the general issue, with a notice that the plaintiffs agreed with the said Williams that said drain should be constructed on the line between the lands of the plaintiffs and those of the owner immediately west of said plaintiffs, and that when the construction of said drain approached the lands of the plaintiffs they were to inform the said defendant Williams, and an arrangement was to be made whereby said ditch was to be dug upon said line, and that plaintiffs did not so inform said defendant, and he had no knowledge of the time when the drain was constructed past the premises of the plaintiffs.

Upon the trial there was not much conflict of testimony as to the facts, save upon the questions of what the agreement was, if any, between said plaintiffs and the defendant Williams, and the amount of damages.

The case was submitted to the jury in a very clear charge, and two special questions were also submitted to be answered, as follows:

1. "What amount, if any, do you allow the plaintiffs as damage awarded because of the dirt excavated from the Fuller drain having been thrown upon plaintiffs' land?

2. "What amount, if any, do you allow the plaintiffs as damages awarded because of their having been wrongfully deprived of their water rights (if you so find)?"

The jury made no answer to the first question, but answered $575 to the second question, and their general verdict being for the plaintiffs in that sum a judgment for the plaintiffs for $575 and costs was rendered.

The defendants made a motion for a new trial based upon the following grounds:

1. That the court erred in not giving defendants' first, second, and third requests to charge. Defendants' first request was to the effect that the jury be instructed to return a verdict of not guilty for the reason that the plaintiffs failed to pursue their remedy by writ of certiorari, and had no right to bring this action. The second request was for a like verdict, for the reason that the undisputed testimony showed that the plaintiffs expressly requested, and consented to the construction of the drain, and granted the right or license to the drain commissioner to construct said drain, using a portion of plaintiffs' land as a right of way, and the plaintiffs by reason of such action could not attack the validity of the drain, or the legality of its construction. The third request was for a like verdict, because plaintiffs' declaration did not allege, nor did their proofs show, or tend to show fraud upon the part of the drain commissioner, or that he lacked jurisdiction in the locating and establishing of said drain; and that certiorari, in the proper court, and at the proper time, was the sole remedy.

2. That the court erred in instructing the jury as follows:

"In this construction of the drain with which we are concerned in this case, since the right of way thereof extended over the west line of the plaintiff's land and upon his land, it was clearly the duty of the drain commissioner, since the plaintiff did not give a release of the right of way and of any damages which might result to him from the construction of the drain, to have instituted in the probate court of this county statutory proceedings of the character to which your attention has just been called and thereby afford to Mr. Laraway his day in court, so that it might be determined whether there was a necessity within the terms of the statute for a drain and for taking Mr. Laraway's land or property rights therefor; and further, for determining what amount of money would be fair compensation therefor, if his property was to be damaged or taken for such purpose.

"The undisputed evidence here shows that Mr. Williams did not do this, but on the contrary, without taking or instituting such proceedings in the probate court, he caused the drain to be constructed adjacent to the plaintiff's property, and incident to such construction the dirt excavated from the drain was deposited upon the plaintiff's land and the water of the creek which theretofore had flowed across plaintiff's land was diverted from its natural course and the plaintiff deprived of his right of access thereto and his use thereof. Since the drain commissioner did not comply with the requirements of the general drain law in doing this work or in causing it to be done by the contractor, he is not protected by the fact that he was acting in the official capacity of a drain commissioner, and therefore in the eye of the law he committed a trespass, and he is liable for the damage, if any, that resulted to the plaintiff in consequence thereof, unless the plaintiff has been shown to have done something which constitutes an estoppel or a waiver of his right to recover such damages.

"As a matter of law I say to you that the plaintiff has not been shown by the evidence in this case to have estopped himself or to have waived his right to recover for any damage that he may have sustained, unless it was done by his agreeing with the drain commissioner, if he did so agree, that as the dredge which was used in the construction of this drain approached the plaintiff's land, he, the plaintiff, would notify the drain commissioner, who would thereupon attempt to have the course of the ditch slightly varied upon the right of way of the drain, in such a way as to continue the flow of the water either upon or adjacent to the plaintiff's land, and notwithstanding such agreement upon the part of the plaintiff he failed to say anything to the drain commissioner, and in consequence thereof the course of the ditch was not changed and the plaintiff because of his own fault was thus deprived of the use of the watercourse which had theretofore passed over his land. In such an event the plaintiff would not be entitled to recover for any damages resulting from being deprived of his former water rights. But even under these circumstances the defendant would not have had a right to have

deposited the dirt excavated from the ditch upon plaintiff's land unless he changed the course of the drain in compliance with the plaintiff's request, and if any damage resulted to the plaintiff therefrom he is entitled to recover to the extent of such damage caused by the dirt being deposited upon his land so far as the damage is shown by the required measure of proof."

3. That the court erred in charging the jury as follows:

"In passing upon this case you should bear in mind that there are no other circumstances shown which would justify the defendant in removing the water from the plaintiff's land. The water right was an appurtenance which belonged to the plaintiff's land, and to the extent of its value as such was a property right, and is as fully protected by the law as any other property right, and if wrongfully removed a right of action accrues to recover for any and all damage resulting. In other words, no one has the right to wrongfully remove a watercourse from the land of another.

"In this connection I say to you that the plaintiff, Mr. Laraway, was under no obligation to take any legal or forcible steps to prevent the drain commissioner from going upon his premises or piling the dirt thereon, or removing the water therefrom, and that the commencement of this suit to recover damages for such action on the part of the drain commissioner is a proper proceeding to bring to test out the question as to whether or not there is a liability for the acts of which the plaintiff complains. And I charge you that the payment under protest by the plaintiff, Mr. Laraway, of $72 which was taxed as the amount of benefits against his farm does not in any way operate against him as a waiver of any damages he may be entitled to by reason of the trespass upon his land, the piling of dirt thereon, destroying his fence, and the removal of his water rights."

4. That the court erred in submitting the question of damages to the jury.

5. That the court erred in charging the jury as follows:

"It appears in this case that since the plaintiff started this suit he has sold the land in question and therefore he no longer has an interest in it. But I charge you as a matter of law, that his having sold the land would not affect his right to recover, if he has otherwise established such right. In other words, for the purposes of this suit, the plaintiff stands in exactly the same position as though he was still the owner of the land."

6. That the court erred in submitting the second special question to the jury.

7. That it was error to submit to the jury any question of damages for loss of water rights, as the undisputed testimony of the purchaser showed that no reduction in price was made by reason thereof.

8. That the verdict was excessive and also against the great weight of the evidence.

The motion for a new trial was denied. Defendants excepted, and have brought the case here, and the errors assigned are substantially those raised upon the motion for a new trial.

The meritorious question presented by appellants is whether certiorari was plaintiffs' sole remedy. The learned circuit judge in denying the motion for a new trial, filed his reasons therefor, and they so fully cover the entire case that we here insert a part thereof with approval, as follows:

"In my judgment, if the facts involved in this case give the plaintiff a right of action against these defendants, then there is no merit in the contention that the verdict rendered is either excessive or contrary to the weight of testimony.

"The real meritorious question now before the court is whether under the facts as presented by the pleading and the evidence this plaintiff has a right to bring an action for trespass against the defendant Williams, who was acting in his official capacity as drain commissioner, and against the other defendants who are the sureties on the drain commissioner's bond. It is

201—Mich.—40.

the contention of defendants that such an action cannot be maintained by the plaintiff, but that his sole and only remedy was to have instituted proceedings in this court by a writ of certiorari. The granting or denying of this motion depends upon the determination of this question. * * *

"A release for the right of way for this drain was secured from all the parties concerned except the plaintiff, but as to him a release was not obtained, nor were the statutory steps taken to secure the right of way across his land. The portion of the drain adjacent to plaintiff's land was dug in the month of June, 1915. During this time the plaintiff was sick in bed. This suit was commenced by summons and the plaintiffs' declaration filed therein on the 9th day of March, 1916. The plaintiff seeks to recover damages which he claims resulted to him by reason of a trespass of the drain commissioner committed in the construction of this drain which resulted in the plaintiff being deprived of valuable water rights and his property being damaged by the unlawful placing of the bank of dirt upon the plaintiff's land.

"The plaintiff claims that the first he knew of the proposed construction of this drain across his land was at the time of the letting of the drain on the 31st day of December, 1914. He claims that at that time and on subsequent occasions when approached in regard to the matter, the drain commissioner assured the plaintiff that the ditch would be dug in such a manner as to leave the water therein accessible on the plaintiff's land. * * *

"The plaintiff, Jerome V. Laraway, denies that he at any time promised or stated to the drain commissioner that he would notify the drain commissioner as the construction of the drain approached plaintiff's premises and that it should then be arranged to change the course of the drain in such a way as not to remove the water from plaintiff's premises. At the trial of the case testimony was given which tended to support the claim made by those respective parties as above outlined. The case was submitted to the jury upon the theory that in the event of defendant's contention being correct the plaintiff would have waived his right to recover in this suit; but on the other hand if the

plaintiff's contention was correct he would not have waived such right, nor would he be estopped from maintaining this suit.

"I have spent a great amount of time in examining the cases bearing upon this question, and I am still of the opinion that it was the duty of the court to submit this case to the jury. In passing upon the contention of the defendants that certiorari is the exclusive remedy available to the plaintiff, we must bear in mind that this suit was not brought for the purpose of preventing the construction of the drain, nor for the purpose of avoiding the payment of the taxes assessed incident to such construction. But it is a suit brought in trespass and the facts alleged by the plaintiff amount in law to a fraud and deceit practiced upon him by the drain commissioner which enabled him to have this drain constructed in such a way as to deprive the plaintiff of his water rights in violation of the agreement which the plaintiff alleges the drain commissioner made with him. Recent decisions of our Supreme Court plainly indicate that it is not the law that certiorari is an exclusive remedy under all circumstances, or under such circumstances as surround this case.

"The case of *Hoffman* v. *Shell*, 151 Mich. 669, holds that the plaintiff was entitled to relief in an injunction bill filed for the purpose of securing a decree which would enjoin the collection of the drain tax. The plaintiff's right to this relief was based upon the ground that he had not received the notice provided in the statute covering the construction of drains and that he had not waived such notice.

"In *Hinkley* v. *Bishopp*, 152 Mich. 256, it was held that certain parties plaintiff were entitled to relief in equity under a bill of complaint by which an injunction was sought to restrain the levy and collection of a drain tax. The court said:

" 'These complainants were entitled to this (statutory) notice, and without it have the right to question their respective assessments by proper proceedings.'

"As to those plaintiffs who had neither had notice nor waived notice of the drain proceedings, the Supreme Court held that the assessment of the tax was null and void.

"There are earlier cases to the same effect. *Wright* v. *Drain Commissioner*, 44 Mich. 557, holds:

" 'Where a notice of the proceeding to lay out a drain has not been given in strict compliance with the statute, subsequent proceedings are void as to those who did not waive notice or are otherwise estopped from objecting.'

"It should be observed, however, that this case was brought before the court upon a writ of certiorari.

"*Township of Merritt* v. *Harp*, 141 Mich. 233, is another case brought before the courts by a bill of equity seeking to restrain the defendants from flooding lands and highways by the wrongful construction or enlargement of drains and asking damages. The Supreme Court said:

" 'Those drains were cleaned out or constructed in whole or in part under the supervision of the defendant Harp (who was the drain commissioner), and as to such drains, he is liable, under our decisions, *to an action at law for any damage which may have resulted from his unlawful acts*, and is subject to the control of a court of equity.' Citing *Bruggink* v. *Thomas*, 125 Mich. 9.

"Thus it seems clear that certiorari is not an exclusive remedy, but that under proper conditions either suits in equity or actions at law may be maintained.

"It has long since been decided in this State that although one is acting in an official capacity, still by reason of his misconduct as a wrongdoer he may become personally responsible. In *Hempfling* v. *Burr*, 59 Mich. 294, it was held:

" 'There is no known rule of law which will exempt a person from personal responsibility for fraud committed in his official character, and while the defrauded party may have more than one wrongdoer to look to for redress, the active wrongdoer is always responsible for his own frauds.'

"Upon principle it would seem that a public officer should be held personally liable for a trespass committed by him or one committed under his direction, even though he is acting in his official capacity."

The questions of fact were, in our opinion, properly submitted to the jury. It cannot be said that the ver-

dict was either excessive or against the great weight of the evidence. A half score of witnesses, including the purchaser from plaintiffs, testified that plaintiffs' damages, by reason of being deprived of the water right, far exceeded the amount of recovery; and while there was testimony that plaintiffs sustained no damages, the verdict should not be disturbed upon either of the grounds urged.

We need to add but little to what the circuit judge has said. In *Zabel v. Harshman,* 68 Mich. 273, this court held that a drain commissioner, before proceeding to construct a drain, must obtain a release of the right of way and of damages, or a condemnation of such right of way, and that the compensation therefor must be ascertained. See, also, *Duryea v. Edinger,* 169 Mich. 218, where we reviewed the authorities, and held that a land owner who was not made a party to the drain proceedings, and whose property rights were affected, might have relief other than by certiorari.

These plaintiffs were not made parties to the drain proceeding; their property rights have been seriously affected by the proceeding, and it is manifest that, unless the agreement claimed by defendants was made (which question was fully submitted to the jury), the plaintiffs had a right to bring and maintain this action.

Some of the minor questions raised we have not discussed, but they have all received attention, and we are of opinion that there is no reversible error in the record, and the judgment of the circuit court is therefore affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.