HOLT v. STOFFLET.

1. SPECIFIC PERFORMANCE—OPTION TO PURCHASE IN LEASE—ESTOPPEL.

   Lessees were estopped from specifically enforcing option to purchase, contained in their lease, where they not only stated orally and in writing they did not intend to exercise such option but took the initiative in suggesting and encouraging defendant landlords to sell to others, showed the property to defendants' prospective purchasers and defendants relied in good faith upon plaintiffs' actions and committed themselves to a sale.

2. ESTOPPEL—EQUITABLE ESTOPPEL.

   The vital principle of an equitable estoppel, or an estoppel *in pais*, is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.

3. SAME—ACTS—REPRESENTATIONS—ADMISSIONS—SILENCE.

   An estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence, induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 19 Am Jur, Estoppel §§ 34, 85.

Appeal from Calhoun; Steinbacher (Harold E.), J. Submitted October 16, 1953. (Docket No. 87, Calendar No. 45,954.) Decided November 27, 1953. Rehearing denied December 29, 1953.

Bill by George M. Holt and wife against Lawrence M. Stofflet and wife for specific performance of option for sale of land. Decree for defendants. Plaintiffs appeal. Affirmed.

*Alfred P. Stuart,* for plaintiffs.

*Cobb, Wilder & Nielsen,* for defendants.

ADAMS, J. On June 30, 1948, the defendants and appellees, Lawrence M. and Patricia Stofflet, leased a restaurant and residence in Marshall, Michigan, for a period of 3 years to George M. and Dorothy E. Holt, plaintiffs and appellants. Included in the lease was an option to purchase, as follows:

"The parties of the first part hereby give unto the parties of the second part an option to purchase the said premises for the sum of $10,000 upon the written request of the second parties made at any time within 1 month of the expiration of the said lease term. If the said second parties should elect to exercise this option then the first parties covenant and agree to credit one-half of all instalments made by the second parties hereunder toward the said purchase price, provided however that there be no arrears of rent due at such time."

On the 28th of May, 1951, with slightly more than 1 month remaining of the 3-year term, plaintiffs served defendants with a notice, which read:

"This is your written notice that the said lessees are exercising their option of purchase as so provided, and request that you have the deed of purchase and the abstract of title in their hands in ample

time before the first day of June, 1951, in order that same may be examined."

Defendants did not convey and on June 22, 1951, plaintiffs filed their bill of complaint praying for specific performance of the option. Thereafter, on defendants' motion, the trial court dismissed the bill of complaint and plaintiffs appealed to this Court. (*Holt* v. *Stofflet,* 334 Mich 272.)

On appeal, this Court held that the notice by which plaintiffs attempted to exercise the option was timely given; that the language of the notice was proper in view of the provisions of the option, and that no tender of the purchase price was required at the time the option was exercised. Accordingly, the order of the trial court was reversed, and the case was remanded for the filing of such further pleadings as might be necessary and proper and a trial on the merits.

Following the decision on appeal, an answer and reply were filed, a trial had, and a decree entered dismissing the bill of complaint. Plaintiffs appeal from that decree.

From the testimony presented at the trial, it appears that on October 4, 1950, the plaintiffs wrote defendant Patricia Stofflet requesting that she come to their place of business "to talk to you about something of quite importance." Shortly afterwards Mrs. Stofflet called upon the plaintiffs and was told that they were not in a position to buy the property upon the termination of the lease and suggested that she try to find another buyer.

On November 16, 1950, Mrs. Stofflet wrote to the Holts telling them that a Mr. Kelly was interested in purchasing and inquiring whether they wished to reconsider their decision. Defendants promptly replied by letter on November 17th, saying, in part:

"No * * * I guess we still wouldn't care to buy the Grill. * * *

"I think you will find the Kellys very reliable people and hope you can do business with them."

The Kellys visited the restaurant and the property was shown to them by the plaintiffs.

Defendants failed to negotiate a sale with the Kellys and on January 13, 1951, entered into a real estate listing agreement with a realtor in Battle Creek. On May 12, 1951, the realtor obtained a written offer to purchase the property and some 2 days later defendants accepted and agreed to pay the realtor a commission of 5% on the sale price of the property. As in the previous instance the plaintiffs were aware of the purchaser's interest and had willingly showed him through the buildings when he called at their home prior to his offer to purchase.

After the defendants had accepted the offer to purchase, plaintiffs served them with the notice of May 28th in which they elected to exercise the option.

It is apparent from the record that the defendants in good faith relied upon plaintiffs' written and verbal statements that they did not intend to exercise their option to purchase the property. Plaintiffs went beyond the mere making of a statement of intention. They took the initiative in suggesting and encouraging defendants to sell to others. They showed the property to defendants' prospective purchasers and gave no indication of their rights as now claimed.

Defendants, with the knowledge and cooperation of the plaintiffs, obtained a purchaser and committed themselves to a sale. While some doubt may exist as to the enforceability of the sales agreement because of lapse of time, there can be no doubt that defendants have obligated themselves to pay a real-estate broker's commission.

Under such circumstances we are of the opinion that the plaintiffs are now estopped from enforcing the option agreement.

"The complainant may have estopped himself without any positive agreement, if he intentionally led defendants to do, or to abstain from doing, anything involving labor or expenditure to any considerable amount, by giving them to understand they should be relieved from the burden of the mortgages. * * * There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect." *Faxton* v. *Faxon,* 28 Mich 159.

"The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais.* The law upon the subject is well settled. The vital principle is, that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both." *Dickerson* v. *Colgrove,* 100 US 578 (25 L ed 618).

"It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. 16 Cyc, pp 722, 723. See, also, Bigelow on Estoppel (5th ed), p 570; *Dann* v. *Cudney,* 13 Mich 239 (87 Am Dec 755); 11 Am & Eng

Enc Law (2d ed), pp 427, 428; 16 Cyc, pp 759, 769."
*Kole* v. *Lampen,* 191 Mich 156, as quoted in *Schudlich* v. *Yankee,* 272 Mich 482, and *Postal* v. *Home State Bank for Savings,* 284 Mich 220, 229.

" 'It has been held in many cases that if the owner of land knowingly stands by and permits his property to be mortgaged or sold by another, to one who is to the owner's knowledge relying on the apparent ownership of the person executing the conveyance, such conduct will estop the owner from asserting his title against the mortgagee or grantee.' *Craig* v. *Crossman,* 209 Mich 462, 480." *Colonial Theatrical Enterprises* v. *Sage,* 255 Mich 160, 169.

The decree is affirmed, costs to defendants.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.