GEFTOS *v* LINCOLN PARK

1. MUNICIPAL CORPORATIONS—ABATEMENT OF NUISANCE—CONSTITU-
   TIONAL LAW.

   A city which has incorporated the state housing code in its or-
   dinances may demolish a house as a nuisance without obtaining
   a judicial order either declaring the house to be a nuisance
   or authorizing its demolition.

2. MUNICIPAL CORPORATIONS—ABATEMENT OF NUISANCE—HOUSING
   LAW—DUE PROCESS.

   A city which has incorporated the state housing code in its or-
   dinances must, before demolishing a house as a nuisance, com-
   ply with either (1) the procedure prescribed by the state
   Housing Law, or (2) a procedure consistent with procedural
   due process; a city can adopt higher minimum requirements
   than recognized due process standards, but it cannot adopt
   standards lower than recognized procedural due process (MCLA
   125.408, 125.502).

3. MUNICIPAL CORPORATIONS—ABATEMENT OF NUISANCE—DUE PROC-
   ESS.

   Procedural due process requires both notice and a hearing be-
   fore a city may demolish property constituting a nuisance;
   the absence of either the notice or the hearing results in an
   unlawful taking.

4. CONSTITUTIONAL LAW—DUE PROCESS—NOTICE.

   The notice required by procedural due process necessitates that
   notice be given not only as to what is to be, or has been
   decided, but also notice as to when and where the hearing

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur 2d, Nuisances § 195 *et seq.*
[3, 4, 7] 58 Am Jur 2d, Nuisances § 203 *et seq.*
[5, 6] 58 Am Jur 2d, Nuisances § 200 *et seq.*
[8, 9] 58 Am Jur 2d, Nuisances § 98 *et seq.*
[10] 58 Am Jur 2d, Nuisances § 55.

on the issues will be held, including what, if anything, must be done to demand such a hearing.

5. MUNICIPAL CORPORATIONS—ABATEMENT OF NUISANCE—DUE PROCESS—NOTICE.

A city charter provision giving the city council general authorization to abate nuisances cannot empower the council to demolish private property by mere resolution because that procedure would result in a denial of procedural due process (MCLA 125.408).

6. MUNICIPAL CORPORATIONS—ABATEMENT OF NUISANCE—DUE PROCESS.

The state law requirement of procedural due process prior to demolishing private property constituting a nuisance must be read into a city charter provision giving the city council the power to demolish property as a nuisance by resolution, because where a city charter is silent or in conflict with the general law of the state, the state law, being paramount, is read into the charter.

7. MUNICIPAL CORPORATIONS—DUE PROCESS—NOTICE—ESTOPPEL—ABATEMENT OF NUISANCE.

City council did not comply with due process when it condemned by resolution plaintiff's house as a nuisance where the plaintiff was not given notice that the issue would be discussed at the city council's meeting, the plaintiff was not given notice as to how to demand a hearing, and the meeting was not convened expressly for the purpose of determining whether plaintiff's house was a nuisance and should be demolished; the facts that the house had once before been declared a nuisance and had been ordered demolished before plaintiff took ownership and that plaintiff was apprised of the council's actions before he took ownership did not eliminate the need for due process where the council held up the first demolition order at plaintiff's request, encouraged plaintiff to repair the house, and the plaintiff, with the city's knowledge, spent considerable time and money to rehabilitate the house.

8. MUNICIPAL CORPORATIONS—ABATEMENT OF NUISANCE—LANDOWNER'S RIGHTS—ESTOPPEL.

An owner of property who has knowledge of a city's resolution and order that his property be demolished as a nuisance is not estopped from seeking damages in an action in trespass by the fact that he failed to make use of remedies available to him to contest demolition before it occurred.

9. TRESPASS—ESTOPPEL—STATUTORY REMEDIES.
   A tort victim's cause of action in trespass is not negated because there were statutory procedures for redressing the wrong.

10. MUNICIPAL CORPORATIONS—SOVEREIGN IMMUNITY—ABATEMENT OF NUISANCE—TRESPASS.
    A city does not have sovereign immunity from trespass liability for the demolition of private property as a nuisance where the city did not comply with procedural due process.

Appeal from Wayne, Joseph G. Rashid, J. Submitted Division 1 February 1, 1972, at Detroit. (Docket No. 10014.) Decided April 5, 1972. Leave to appeal denied, 387 Mich 799.

Complaint by Thomas P. Geftos against the City of Lincoln Park and Rudoni Excavating Company for damages caused by the demolition of his home. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*D'Avanzo & Danko,* for plaintiff.

*Robert E. Butcher,* for defendants.

Before: LESINSKI, C. J., and J. H. GILLIS and QUINN, JJ.

J. H. GILLIS, J. Plaintiff appeals as of right from a judgment on a nonjury verdict of no cause of action on his complaint for damages caused by the demolition of his home by the defendants.

On July 26, 1965 (prior to the time plaintiff assumed ownership of the house in question), the Lincoln Park City Council declared said premises a nuisance and ordered its abatement or removal upon its vacation by the present occupants. On August 15, 1966, the council renewed its determination (the premises having been vacated) and ordered the superintendent of the department of public serv-

ices to remove or abate the nuisance should the owner fail to do so within 30 days.[1] During August of 1966, plaintiff began negotiations with the former owner for the purchase of said property. Prior to the consummation of the sale, plaintiff became aware that the city had condemned the property as a nuisance and required its removal or abatement. Having been informed that the home could be repaired to meet the requirements of the building code, plaintiff proceeded on September 22, 1966, to acquire title to the premises. At plaintiff's request the council held up the previously ordered demolition of the structure. Subsequently, plaintiff engaged in a great deal of correspondence with various city officials in attempting to discover what steps would be necessary to repair and update the premises. A number of repairs were actually made entailing the expenditure of various sums of money.

On February 6, 1967, plaintiff attended another city council meeting (having appeared before said council four times prior thereto) at which the building superintendent was in attendance. The council, having been informed that the basic defects in the structure had neither been repaired nor were proposed to be repaired, thereupon passed a resolution renewing its determination declaring the home to be a nuisance and ordering its demolition on or after March 9, 1967, if the plaintiff had not abated or removed it by that time.[2]

On March 10, 1967, defendant Rudoni, at the request and order of defendant city, entered upon the premises at 734 Park Street and demolished the

---

[1] Plaintiff does not contest the validity of these proceedings or their resulting determinations, all of which involved the former owner of the premises in question.

[2] It is disputed as to whether or not the resolution was read out loud at the council meeting in the presence of plaintiff.

home thereon, plaintiff and his wife being on a Florida vacation at the time. Thereafter, plaintiff was billed by the City of Lincoln Park for costs in the amount of $1,666.50.

Two main issues are presented on appeal: (1) whether or not the plaintiff was denied procedural due process when defendants demolished his home, and (2) whether defendants can assert "sovereign immunity" thus being absolved from tort liability in this case.

Section 10-1-1 of the Lincoln Park Code incorporated by reference the housing code of the State of Michigan, MCLA 125.401 et seq.; MSA 5.2771 et seq., as being in full force and effect in the City of Lincoln Park. MCLA 125.502; MSA 5.2874[3] delineates the procedure to be followed in demolishing houses as nuisances:

*"Except as herein otherwise specified, the procedure for the prevention of violations of this act or for the vacation of premises unlawfully occupied, or for other abatement of nuisance in connection with a dwelling, shall be in accordance with the existing practice and procedure.* In case any dwelling, building or structure is constructed, altered, converted or maintained in violation of any provision of this act or of any order or notice of the health officer or such other appropriate public official as the mayor may designate, or in case a nuisance exists in any such dwelling, building or structure or upon the lot on which it is situated, said health officer or such other appropriate public official as the mayor may designate, may institute any appropriate action or proceeding to prevent such unlawful construction, alteration, conversion or maintenance, to restrain, correct

---

[3] The house was demolished on March 10, 1967. MCLA 125.502; MSA 5.2874 was repealed on November 15, 1968 and was replaced by MCLA 125.540, 125.541; MSA 5.2891(20), 5.2891(21), effective September 1, 1969.

or abate such violation or nuisance, to prevent the occupation of said dwelling, building or structure, or to prevent any illegal act, conduct or business in or about such dwelling or lot. In any such action or proceeding said health officer may by a bill or petition duly verified, setting forth the facts, apply to the circuit court in chancery for the county, or to any judge thereof, for an order granting the relief for which said action or proceeding is brought, or for an order enjoining all persons from doing or permitting to be done any work in or about such dwelling, building, structure or lot, or from occupying or using the same for any purpose until the entry of final judgment or order. In case any notice or order issued by said health officer or such other appropriate public official as the mayor may designate, is not complied with, said health officer may apply to the circuit court or to any judge thereof for an order authorizing him to execute and carry out the provisions of said notice or order, to remove any violation specified in said notice or order, or to abate any nuisance in or about such dwelling, building or structure or the lot upon which it is situated. The court or any judge thereof is hereby authorized to make any order specified in this section. In no case shall the health department, health officer, or such other appropriate public official as the mayor may designate, or any officer or employe thereof, or the city, be liable for costs in any action or proceeding that may be commenced in pursuance of this act. The actions, proceedings and authority of the health officer shall at all times be treated as prima facie just and legal." (Emphasis supplied.) CL 1929, § 2590.

As exemplified in the first sentence of the quoted section a procedure other than the one set forth in § 102 (MCLA 125.502; MSA 5.2874) may be used to demolish a home as a nuisance provided it is in accordance with "existing practice and procedure". Therefore, it was *not* necessary for the City of Lin-

coln Park to obtain a judicial order either declaring plaintiff's house to be a nuisance or authorizing its demolition.   Furthermore, § 8 of the state Housing Law, MCLA 125.408; MSA 5.2778, provides in part:

"The provisions of the act shall be held to be the minimum requirements adopted for the protection of health, welfare and safety of the community. Nothing herein contained shall be deemed to invalidate existing ordinances or regulations of any city or organized village or the board of health of any such city or village imposing requirements higher than the minimum requirements laid down in this act relative to light, ventilation, sanitation, fire prevention, egress, occupancy, maintenance and uses for dwellings; nor be deemed to prevent any city or organized village or the board of health of any such city or village from enacting and putting in force from time to time ordinances and regulations imposing requirements higher than the minimum requirements laid down in this act; nor shall anything herein contained be deemed to prevent such cities and organized villages or the board of health of any such city or village from prescribing for the enforcement of such ordinances and regulations, remedies and penalties similar to those prescribed herein. And every such city and organized village or the board of health of any such city or village is empowered to enact such ordinances and regulations and to prescribe for their enforcement. *No ordinance, regulation, ruling or decision of any municipal body, officer of authority of the board of health of any such city or village shall repeal, amend, modify or dispense with any of the said minimum requirements laid down in this act;  *  *  *  .*"  (Emphasis supplied.)

It seems to us that the Legislature, in enacting § 102, specifically recognized the powers which it had given to the cities and made provision for the abate-

ment of a nuisance through the exercise of their respective powers. However, we conclude that in order for the City of Lincoln Park to legally demolish a house other than by proceeding under § 102 (MCLA 125.502; MSA 5.2874), it is mandatory that it comply with "existing practice and procedure"—meaning compliance with recognized procedural due process. Thus, defendant City could adopt higher minimum requirements but under no circumstances could it adopt lower standards or "repeal, amend, modify or dispense with any of the said minimum requirements laid down in this act".

Again and again, due process of law is interpreted as meaning the necessity for following the procedures of law. As noted by the Supreme Court of Pennsylvania in *Hess* v *Westerwick,* 366 Pa 90, 96–97; 76 A2d 745, 748 (1950):

"It is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law. Without due process of law the right of private property cannot be said to exist. As said by Mr. Justice Pitney in *Ochoa* v *Hernandez y Morales,* 230 US 139, 161; 33 S Ct 1033, 1041; 57 L ed 1427 (1912), 'The principle, known to the common law before Magna Carta, was embodied in that Charter (2 Coke, Inst 45, 50), and has been recognized since the Revolution as among the safest foundations of our institutions. Whatever else may be uncertain about the definition of the term "due process of law," all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and *without notice* or an opportunity for a hearing.'"

As due process has been interpreted to require both "notice" and "hearing," the absence of either will result in a denial of due process, hence, an un-

lawful taking. It is important to recognize that for notice to be effective, it is necessary that notice be given not only as to what is to be (or has been) decided (*i.e.,* the determination of plaintiff's house to be a nuisance and the decision to demolish it) but also notice as to when and where the hearing is going to take place regarding said issues, including what, if anything, must be done to demand such a hearing. To omit the latter would certainly serve to destroy the whole purpose of a hearing—providing one with an opportunity before the taking of his property to defend, protect, and enforce his rights.

In quoting from various cases, the Court in *Napuche* v *Liquor Control Commission,* 336 Mich 398, 403–404 (1953), stated:

" 'Due process of law requires notice and opportunity to be heard. It imports the right to a fair trial of the issues involved in the controversy and a determination of disputed questions of fact on the basis of evidence.' *Dation* v *Ford Motor Co,* 314 Mich 152, 167 (1946) (19 NCCA NS 158).

\*   \*   \*

" 'The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play.' *Morgan* v *United States,* 304 US 1, 22; 58 S Ct 773, 778; 82 L Ed 1129, 1134 (1937).

" 'Unless the right is waived, the person charged is at least entitled to:

" '(1) *Notice of a time and place of hearing.*

" '(2) A hearing before a properly authorized body.

" '(3) *A reasonably definite statement of the charge or charges preferred against the accused.*

" '(4) The right to cross-examine the witnesses who testify against him.

" '(5) The right to produce witnesses in his own behalf.

" '(6) A full consideration and a fair determination according to the evidence of the controversy by the body before whom the hearing is had.' *Hanson v State Board of Registration in Medicine,* 253 Mich 601, 607 (1931)." (Emphasis supplied.)

Turning to the case at bar, we discover that defendant's alleged legal authorization for demolition of plaintiff's house was chapter 6, § 27 of the Charter of the City of Lincoln Park:

"The council shall have power to prevent, remove and abate all nuisances dangerous to life or health within the city and may require any person, corporation or company causing such nuisance; and the owner or occupant of any lot or premises upon or in which any such nuisance or cause of diseases may be found, to remove or abate the same upon such notice and within such time and in such manner as the council may by ordinance or resolution direct."

Pursuant to this charter provision, the City council of the City of Lincoln Park, on February 6, 1967, passed the resolution declaring the premises to be a nuisance and ordering its demolition on or after March 9, 1967.

Although the above provision provides for the general authorization to abate nuisances, it cannot legally authorize the city council to demolish private property by mere resolution. Compliance with procedural due process (namely, notice and hearing) is

both fundamental and obligatory. To read § 27 as authorizing demolition by resolution without the need for observing procedural due process would result in a conflict between city charter and state law, thereby causing an unnecessary nullification of the charter.[4] The Michigan Supreme Court has repeatedly held that provisions of a home-rule city charter shall not conflict with or contravene the provisions of any general law of the state, the latter being paramount, MCLA 117.36; MSA 5.2116; *Amberg* v *Welsh*, 325 Mich 285, 293 (1949); *City of Grand Haven* v *Grocer's Cooperative Dairy Company*, 330 Mich 694 (1951). Additionally, when the charter of a municipal corporation is silent upon a subject, the applicable general laws of the state must be read into said charter. *Amberg* v *Welsh*, *supra; Saginaw Council* v *Board of Trustees*, 321 Mich 641, 647 (1948); *City of Hazel Park* v *Municipal Finance Commission*, 317 Mich 582 (1947).

In considering whether defendant city observed procedural due process in proceeding under § 27 of its charter, we conclude there was a denial of adequate notice and hearing. The record is clear that the council meeting of February 6, 1967, was *not* convened expressly for the purpose of determining whether plaintiff's house was a nuisance and if it should be demolished nor was plaintiff notified prior to the meeting that such action was imminent or even contemplated. The topic of plaintiff's house was not on the council agenda for the meeting of February 6, but, instead, the issue was heard during the time reserved for "citizens request". Plaintiff appeared thinking he was just going to another council meeting to speak from the floor as a citizen about his

---

[4] It is again pointed out that § 10-1-1 of the Lincoln Park Code incorporated by reference the procedures of the state Housing Law for abating and demolishing houses which are declared nuisances.

particular problem (just as he had done four times previously), and had no notice he was attending a hearing to decide whether his house was to be demolished. Alternatively, the resolution itself failed to include notice to the plaintiff of his right to a hearing regarding the council's determinations.[5]

Nor can it be successfully argued that because the city had, on August 15, 1966 (being prior to the time plaintiff took ownership of the premises), declared the home to be a nuisance and ordered its demolition within 30 days, plaintiff was not entitled to any additional notice and hearing regarding the renewal of these determinations, he having been apprised of the city's actions prior to the time he took ownership. It is clear from the record that the city assented to the subject home being repaired or rehabilitated and even encouraged plaintiff to do so. Consequently, plaintiff did, in fact, take steps to repair the premises and expended considerable time and moneys for that purpose, all with the knowledge of the city, its agents, and employees. Additionally, the city did in fact hold up the contemplated demolition at plaintiff's request. Because of the foregoing, we hold that the city is now estopped from acting under the council resolution of August 15, 1966, with regard to the plaintiff. In light of the above we conclude that in the demolition of plaintiff's house there occurred a taking of property without due process of law.

---

[5] In *Himes* v *City of Flint*, 38 Mich App 308, 316 (1972), this Court, in reversing the lower court's denial of a motion for summary judgment as to the liability of the City of Flint for its failure to provide adequate notice prior to proceeding with the demolition of plaintiff's property, stated: "Therefore, not only did the notice fail to comply with the mandatory provisions of the applicable ordinance but it also was constitutionally defective in that it did not advise plaintiffs of their right to a hearing before the city board of appeals prior to demolition."

Given the fact that plaintiff had knowledge of the impending action of the city as set forth in the resolution of February 5, 1967, defendants assert that plaintiff, in failing to make use of the remedies available to him in order to contest these actions before the structure was demolished, is thereby estopped from seeking damages in this suit. However, defendants fail to cite any cases which indicate that as a condition precedent to seeking damages in a trespass action, the injured party must first have sought to enjoin said illegal act. As pointed out in *Laraway* v *Williams,* 201 Mich 617 (1918), any argument that there are other statutory procedures for redressing a tort victim's distress does not negate his cause of action in trespass. To permit defendants' claim of estoppel would be to remove the burden upon the city to act legally, in favor of imposing a duty upon an innocent tort victim to force legal action. This we will not do.

Finally, defendants assert on appeal the affirmative defense of sovereign immunity. In *Maki* v *City of East Tawas,* 385 Mich 151 (1971), the Michigan Supreme Court declared unconstitutional MCLA 691.1407; MSA 3.996(107), which provided a governmental agency engaged in the exercise of a governmental function immunity from tort liability. Furthermore, inasmuch as the instant case involves an uncompensated taking against which a property owner is guaranteed by the Federal and state constitutions, it is doubtful that "sovereign immunity" would in any way apply. Additionally, the Court in *Maki* at p 158, in discussing the distinction between "negligence" and "tort" stated:

"As the trial judge pointed out, the headings in Prosser on Torts refer to actions based on nuisance, *direct trespass,* assault and battery, false arrest, deceit, defamation, abuse of process, malicious prose-

cution and economic duress—all of which are tort actions apart from negligence and all of which might be brought against a governmental body."[6] (Emphasis supplied.)

Reversed and remanded for a new trial. Costs to plaintiff.

All concurred.

---

[6] See also, *Robinson* v *Wyoming Twp*, 312 Mich 14 (1945), which held that a municipality is liable for injuries resulting from its direct act or trespass regardless of whether it was acting in a public or private capacity.