**MANUFACTURERS SUPPLY COMPANY a Michigan corporation, Plaintiff,**

v.

**MINNESOTA MINING AND MANUFAC- TURING COMPANY ("3M Company"), a Delaware corporation, Defendant.**

No. G85–960 CA1.

United States District Court, W.D. Michigan, S.D.

June 7, 1988.

Rhoades, McKee & Boer by Dale W. Rhoades and Michael Small, Grand Rapids, Mich., for plaintiff.

Miller, Johnson, Snell & Cummiskey by Jon G. Marsh and Robert J. Christians, Grand Rapids, for defendant.

F. William McKee of Warner Norcross & Judd, Grand Rapids, Mich., for Norton Co., E. Andel and P. Madden.

**304**

## OPINION GRANTING DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

HILLMAN, Chief Judge.

On September 30, 1987, defendant filed a motion for summary judgment on plaintiff's four count complaint. With respect to count IV, defendant also argued that the complaint should be dismissed for failure to state a claim. The court heard oral argument on March 24, 1988. At that time the parties agreed to drop the tortious interference claim (count III) and I granted defendant's motion with respect to plaintiff's breach of contract claim (count I). Plaintiff requested an opportunity to file additional briefs respecting counts II and IV. I granted that request and both parties consequently filed briefs.

For the reasons discussed below, defendant's motion is granted and counts II and IV are dismissed.

### I. Factual Background

Minnesota Mining and Manufacturing Company ("3M") manufactures a variety of grinding belts, discs, and sandpaper ("coated abrasives") used for metal and wood finishing. In Michigan, 3M markets its coated abrasive products through a combination of its own sales people and independent distributors. The sales people call on, service, and obtain sales from end-use customers, however, with only a few exceptions not at issue in this case, all sales are made through authorized distributors. End-use customers select the distributor with whom they place their orders. In western Michigan several distributors, including plaintiff Mansco, handle 3M products.

Plaintiff Mansco has sold 3M products for approximately 28 years. Prior to 1979, plaintiff's sales of 3M products were made primarily to Steelcase. However, in 1980, 3M terminated a distributorship agreement with another of its distributors, Lakeshore, thus leaving a number of 3M customers in need of a new supply source. Mansco solicited this business and its sales of 3M abrasives consequently grew.

Plaintiff also sells Norton coated abrasives and the majority of its sales of coated abrasives, both before and after the termination of Lakeshore's 3M distributorship, consisted of Norton products.

### II. Standard of Review

When a motion to dismiss is brought, the court is called on to determine if the plaintiff's pleadings set forth allegations sufficient to make out the elements of a right to relief. "[W]ell pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir.1975). *See also Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). However, mere conclusions will not save a complaint from dismissal. *See Blackburn v. Fisk University*, 443 F.2d 121, 125 (6th Cir.1971).

On a motion for summary judgment, the moving party bears the burden of clearly establishing that there exist no issues of fact material to a judgment in his or her favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976). Once the motion and supporting materials are filed by the movant, the non-moving party has the responsibility of setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether there are issues of fact requiring trial, the inferences to be drawn from the affidavits, exhibits, or depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, such inferences must

be justifiable. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). A genuine factual issue is one that, applying the substantive evidentiary standard of proof applicable at trial, could reasonably be resolved in favor of either party. *Id.* at 255, 106 S.Ct. at 255. If the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted" in favor of the movant. *Id.* at 256–57, 106 S.Ct. at 2514–15.

III. *Discussion*

    A.   Detrimental Reliance Claim (count II)

In count II, plaintiff sets forth a detrimental reliance claim. Plaintiff cites letters sent to it by defendant which stated that plaintiff had breached its duty to "vigorously promote" defendant's products and threatened termination if plaintiff did not submit an appropriate promotion plan within 30 days. Plaintiff argues that defendant, by virtue of its course of dealing with Manasco over a 28–year period, caused plaintiff to conclude and rely upon the conclusion their contractual relationship was not contingent on the "vigorous promotion" of 3M's products. Plaintiff apparently argues that, relying on defendant's conduct, it assumed it could sell defendant's products without having to vigorously promote them. Consequently, plaintiff allegedly invested in the development of defendant's product line, in securing and keeping customers for defendant's products, in making defendant a major supplier of plaintiff's coated abrasive products, and in seminars and training in the use and marketing of defendant's products.

█ Plaintiff's detrimental reliance argument is based on the principle of equitable estoppel, a principle of equity applicable when:

one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

*Holt v. Stofflet*, 338 Mich. 115, 119, 61 N.W.2d 28 (1953) (citations omitted); *Christoff v. City of Gladstone*, 65 Mich.App. 607, 237 N.W.2d 579, 581 (1976). The facts supporting an estoppel claim must be clearly made out. *Payne v. Payne*, 241 Mich. 547, 552–53, 217 N.W. 756 (1928). Furthermore, where an agreement is based on estoppel arising from the defendant's silence, plaintiff must allege reliance on the silence, an obligation or duty to speak out, and a change in position. *Chemetron Corp. v. McLouth Steel Corp.*, 522 F.2d 469, 473 (7th Cir.1975) *quoting Bivens Corp. v. Community National Bank of Pontiac*, 15 Mich.App. 178, 166 N.W.2d 270, 272 (1968). Consequently, for Mansco's estoppel claim to succeed it must demonstrate (1) that 3M misled Mansco by not expressly requiring Mansco to "vigorously promote" its product; (2) that 3M had a duty to expressly state such a requirement; (3) that Mansco justifiably relied on 3M's silence; and (4) that Mansco detrimentally changed its position based on a justifiable reliance on 3M's failure to state its requirements.

Plaintiff alleges that defendant could not properly terminate its distributorship on the grounds that plaintiff failed to vigorously promote 3M products. Plaintiff argues that over its 28 year relationship with defendant it never vigorously promoted defendant's product. Relying on the principle of equitable estoppel, plaintiff argues that since defendant failed to warn it that this was unacceptable behavior, defendant could not justify plaintiff's termination on such grounds. (Amended Complaint Count II, ¶¶ 2 and 3.)

In its most recent brief, defendant makes at least four arguments supporting its motion for summary judgment on count II. First, it argues that plaintiff's detrimental reliance theory is an "afterthought" alleged two and one-half years after termination and several months after defendant filed its first motion for summary judgment. Second, defendant offers deposition testimony supporting its contention that it

was not silent as to its dissatisfaction with plaintiff Mansco's performance. Specifically, defendant cites the testimony of three of plaintiff's own officers and supervisors. (See Mol Deposition II, at 59, 109, 153–54; Simpson Deposition, 121; Haveman Deposition, 97.) Third, defendant argues that since the court, in its ruling from the bench, determined the relationship between Mansco and 3M was terminable at will, plaintiff was unjustified, as a matter of law, in believing anything other than that either party could terminate their agreement at will. Finally, defendant argues that plaintiff's claims of detrimental reliance are not supported by the record.

■ I agree with defendant. Without delving into the question of the alleged detriment, I am satisfied that plaintiff is unable to make out a claim on either one of two other grounds. First, as a legal matter, in light of the at-will nature of the agreement between plaintiff and defendant, plaintiff was not "justified" in assuming that defendant could not terminate its agreement for any cause or no cause provided the requisite notice was given. Second, even if plaintiff's reliance could somehow be characterized as justifiable, I am satisfied that there is no genuine issue of fact regarding defendant's silence in the face of plaintiff's sales practices. It is undisputed from the deposition testimony of plaintiff's own employees that defendant quite specifically pointed out its concerns to plaintiff on several occasions. Without being able either to show silence on the part of the defendant or that its alleged reliance was justified, plaintiff does not have a cognizable claim against 3M under count II.

## IV. *Alleged Anti–Trust Violations* (count IV)

Defendant's remaining claim, count IV, alleges a violation of the Robinson–Patman Act, 15 U.S.C. § 13, the Sherman Act, 15 U.S.C. § 1 *et seq.* and the parallel Michigan antitrust act, M.C.L.A. § 445.772. However, plaintiff's expert, Doctor Steve Martin of Michigan State University, states that he finds nothing anti-competitive about defendant's termination of plaintiff's distributorship and no potential violation of the Robinson–Patman Act. (Martin Dep. I, at 70–74, 78.) *See also Dunn & Mavis, Inc v. Nu–Car Driveaway, Inc.,* 691 F.2d 241, 243–44 (6th Cir.1982). Furthermore, in its most recent brief in opposition to defendant's motion to dismiss for failure to state a claim or for summary judgment, plaintiff does not discuss the Robinson–Patman Act. Therefore, it appears that the only remaining legal basis for plaintiff's claim is the Sherman Act and the parallel Michigan Antitrust statute.

The sole factual basis of plaintiff's antitrust claim is the paragraph in defendant's Industrial Division Distributor Agreement which states:

> Distributor agrees to sell or distribute the products only to industrial end users or industrial consumers and will not sell products to anyone for further resale, except that occasional accommodation sales to other authorized 3M distributors of the same product lines located within distributors' approved geographic areas shall not be forbidden under this provision.

This type of agreement, whereby distributors are prohibited from reselling a manufacturer's product to certain customers or outside certain territories, is commonly known as a vertical restraint.

Defendant argues that plaintiff's claim must be dismissed for failing to plead an antitrust violation with adequate specificity. Alternatively, defendant argues that even if plaintiff's amended complaint is found adequate, it should be dismissed pursuant to Rule 56. Although defendant has submitted materials outside the pleadings in support of its summary judgment motion, the court is not obligated to accept them. At its discretion the court, ruling on the motion to dismiss, may make its determination solely on the basis of the adequacy of the pleadings.

■ Absent some agreement regarding price, a vertical restraint is not a per se violation of the Sherman Act. *Business Electronics Corp. v. Sharp Electronics Corp.,* — U.S. —, 108 S.Ct. 1515, 99

L.Ed.2d 808 (1988); *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). The restraint described above contains no price agreement. Thus, plaintiff has the burden of establishing that the particular acts alleged are unreasonable restraints of trade. *Kerasotes Mich. Theaters v. Nat. Amusements, Inc.*, 658 F.Supp. 1514, 1518–19 (E.D.Mich.1987) citing *Continental T.V. v. GTE Sylvania, supra.* Unreasonableness will only be found to have been properly pled where the defendant is alleged to have sufficient power in a particular market to maintain a monopoly or retain prices in the face of interbrand competition. *Dunn*, 691 F.2d at 244. Similarly, in order to demonstrate that a defendant has an adverse effect on competition, plaintiff must first show that it has market power. *Hand v. Central Transport, Inc.*, 779 F.2d 8, 11 (6th Cir.1985). Market power is "normally inferred from the possession of a substantial percentage of the sales in a market carefully defined in terms of both product and geography." *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 666 (7th Cir.1987) (citation omitted). Thus, unless a plaintiff pleads facts suggesting an anticompetitive effect through a monopoly in a specified area, its complaint may be defeated by a rule 12(b) motion to dismiss.

■ Defendant argues that despite an opportunity to amend, plaintiff has neither pled that defendant has market power nor the relevant market in which such market power is exercised and must therefore be dismissed. I agree. Nowhere in plaintiff's complaint is there any allegation that defendant has market power in a specific geographical area. Neither are facts alleged from which one could infer that defendant has a substantial percentage of the sales in a carefully defined market area. In fact, the complaint does not even contain a general allegation that defendant has market power in an unspecified area.

Having found that plaintiff's complaint fails to state a claim, I need not address defendant's motion for summary judgment. However, having carefully reviewed the evidence which I ignored in ruling on defend-ant's 12(b)(6) motion, and having drawn from it all the inferences that can justifiably be drawn in favor of the plaintiff, I am satisfied that even if I let count IV proceed beyond the pleading stage, no jury could reasonably find that defendant had the market power which is requisite to the application of the rule of reason test of Sherman Act cases. *See, e.g., Valley Liquor, supra.* A brief review of my analysis in this regard, is in order.

First of all, it should be noted that plaintiff cites *Smith v. Northern Michigan Hospitals, Inc.*, 703 F.2d 942, 947 (6th Cir. 1983), for the proposition that the Sixth Circuit particularly disfavors summary judgments in antitrust litigation. However, that case preceded the United States Supreme Court's pronouncements regarding summary judgment in *Celotex, supra,* and *Anderson, supra.* Seen in the light of these later cases, I am satisfied that summary judgment here is proper.

In his second deposition, plaintiff's expert states that 3M's market share could reasonably be estimated somewhere between 36 and 47 percent. (Martin Dep. II, at 230–34.) However, he explained that that percentage was based on the assumption that the sales figures used applied only to Kent and Ottawa Counties. (Martin Dep. II, at 227–28.) In fact, those figures, obtained from defendant's answer to plaintiff's interrogatories, reflected sales for all counties west of highways I–75 and US–127. When he calculated the percentage of sales in light of this broader base, Professor Martin estimated 3M's share to be 25.8 percent of the market. (Martin Dep. II, at 228–30.)

■ Absent other evidence that an entity has monopoly power, a market share of between 17 and 25 percent is generally not enough to uphold a finding of monopolization. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 490 (5th Cir. 1984). Plaintiff argues that other factors are present in this case, specifically, barriers to entry, product differentiation, and failure by 3M to compete on price. I have reviewed the evidence submitted by both parties with respect to these allegations

and I am satisfied that no reasonable jury could agree. On the basis of all the information submitted to the court, I am satisfied, by a preponderance of the evidence, that these other factors are not present in this case. Thus, as an alternative to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), summary judgment for defendant would also be proper.

## V. *Conclusion*

For the reasons stated above, defendant's motion for summary judgment on count II is granted. Defendant's motion to dismiss count IV pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted and, in the alternative, defendant's motion for summary judgment on count IV is granted.