**In Re Special Assessment Appeals of COUNTY OF RAMSEY, Respondent,**

**v.**

**TOWN OF WHITE BEAR, Appellant.**

**No. C7–90–2104.**

Court of Appeals of Minnesota.

May 7, 1991.

Review Denied July 24, 1991.

---

John F. Bannigan, Jr., James J. Hanton, Bannigan & Kelly, P.A., and Robert F. Lydon, St. Paul, for appellant.

Tom Foley, Ramsey County Atty. and David F. MacMillan, Asst. County Atty., St. Paul, for respondent.

Considered and decided by FORSBERG, P.J., and PARKER and AMUNDSON, JJ.

## OPINION

FORSBERG, Judge.

On September 18, 1989, appellant Town of White Bear (the Township) levied special assessments against nine parcels of respondent Ramsey County's (the County) open space property in Otter–Bald Eagle Lake Regional Park, partially located within the township. The assessment arose out of Town Improvement Project 1989–2 consisting of construction of watermain extensions. The County appealed from the assessments pursuant to Minn.Stat. § 429.081 (1988) contending the special assessments were invalid because the improvement did not benefit the parcels assessed.

The County contends because the property assessed is forever dedicated to public open space/recreational use, it had little or no market value before the improvements were installed. Because no willing buyer would pay more for the property simply because of the improvements, there was no increase in market value attributable to the improvements and, therefore, no benefit to the property which could sustain the assessments.

The Township contends any restrictions on use do not affect marketability, or should be ignored when determining whether the special assessments benefited the property. It also contends actions by the County constituted waiver and estoppel of its right to appeal the assessments.

The trial court issued judgment in favor of the County, ordering the Township to reassess the property. Subsequently, the Township brought a motion for amended findings of facts or, in the alternative, a new trial, which was denied. We reverse.

## FACTS

The property in question consists of nine parcels owned by the County along a portion of Otter Lake Road within the township. The parcels are part of Otter–Bald Eagle Lake Regional Park.

Prior to the purchase of the parcels by the County, the parcels were zoned for light industrial, general business, and single family use. The property surrounding the subject parcels is primarily zoned for single family residential use. The parcels are now zoned open space, but if not acquired by the County for the park, they would be zoned suburban residential.

The County first sought permission from the Township to acquire these parcels for open space purposes in early 1972. Because township officials expressed concern regarding payment for future improvements along contiguous and intersecting roads, the original concept plan contemplated only the acquisition of wetland areas largely unsuitable for development. The parcels suitable for development along Otter Lake Road were to be left as a "development corridor."

By March 1974, however, the County had acquired nine parcels including the wetland property, and the parcels along Otter Lake Road. The Township's approval of the acquisition was premised on the County's representation that most of the open spaces were intended to be left in their natural state. The Township's comprehensive plan, adopted on September 26, 1975, included these parcels as open space. No mention was made in the plan of potential use of the parcels as a regional park.

In December 1988, the County began identifying the parcels as a regional park. Designation as a regional park is an important change in the status of the parcels. The Metropolitan Council's guidelines for regional parks require planning for more intensive recreational activities and/or higher carrying capacities than passive open space. The preservation of wildlife and natural area is generally intended for park reserves, whereas regional parks are intended to provide recreational opportunities for large numbers of users. (See Metropolitan Council, Recreation Open Space—Development Guide–Policy Plan (Adopted April 1986).) The Metropolitan Council's guidelines provide for a far greater development of parking facilities, concession stands, toilet facilities, etc. than might originally have been envisioned when the property was purchased for passive open space.

At the present time the parcels remain essentially undeveloped with the exception of a parking lot for the Tamarack Nature Center. The Tamarack Nature Center itself, which is not located on the parcels in question, operates pursuant to a conditional use permit issued by the Township and is subject to assessments by the Township. The most recent conditional use permit for the center was issued to the Ramsey County Parks and Recreation Department on June 20, 1988. As a condition for that permit, the Department was required to continue paying its fair share costs of "linear front footage of assessments" for public water and sanitary sewer improvements.

The Township's records indicate that since 1975, special assessments have been levied against the County for portions of the Otter–Bald Eagle Lake Regional Park for 10 different public improvement projects. These assessments total approximately $406,000. They include earlier special assessments along Otter Lake Road for watermains and a sanitary sewer. The County contested none of these special assessments. Its appeal of the special assessments against the nine parcels in question is the first appeal the County has made against the Township's special assessments.

## ISSUE

Did the County satisfy its burden of proof and rebut the presumption of validity of the special assessments on the property in question?

## ANALYSIS

■ The levying of a special assessment by a township is a legislative act. *Joint Indep. School Dist. No. 287 v. City of Brooklyn Park*, 256 N.W.2d 512, 516

(Minn.1977). "When an assessment is regularly made, it is presumed to be lawful and correct and the burden of proof rests upon the objector to demonstrate its invalidity." *Id.*

Minn.Stat. § 435.19, subd. 1 (1990) authorizes any town to "levy special assessments against the property of a governmental unit benefited by an improvement *to the same extent as if such property were privately owned.*" (Emphasis added.) The governmental body of a township "may determine the amount that would have been assessed had the land been privately owned." Minn.Stat. § 435.19, subd. 2 (1990). Nothing in the statute, nor any other statute, exempts regional park land from special assessments.

■ In order for a special assessment to be valid, the property assessed must receive a special benefit from the improvement being constructed, the assessment must be uniform upon the same class of property, and the assessment may not exceed the special benefit. *Carlson–Lang Realty Co. v. City of Windom,* 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976). At issue is only whether the land assessed received a special benefit from the Township's Improvement Project 1989–2 by constructing a watermain along nine parcels of the County's property in Otter–Bald Eagle Regional Park.

■ The trial court held that because of severe restrictions on the use of the property in question, the property had little or no market value before the installation of the watermain as part of the special project. It further found the installation of the watermain did not benefit the property or increase the market value in any amount because those restrictions were unaffected by the improvement. Therefore, the trial court found the Township was constitutionally prohibited from assessing the property in any amount. We disagree. (It is somewhat puzzling that the trial court used the term "constitutionally prohibited" since a county, unlike a person, does not enjoy the due process rights under the constitution. *See State ex rel. Indep. School Dist. No.*

*276 v. Dep't of Educ.,* 256 N.W.2d 619, 624 (Minn.1977).)

■ There is ample and credible evidence that the installation of the watermain provided a special benefit to the subject property for purposes of fire fighting. While the primary beneficiary of increased fire protection at this time is the Tamarack Nature Center, the increased fire protection also benefits the entire park and whatever future improvements are made to the park. Courts in other jurisdictions have found that enhanced fire protection confers a special benefit. *See Christoff v. City of Gladstone,* 65 Mich.App. 607, 237 N.W.2d 579 (1975); *North Platte, Neb. Hosp. Corp. v. City of North Platte,* 232 Neb. 373, 440 N.W.2d 485 (1989); *Midwest Dev. Corp. v. City of Norfolk,* 192 Neb. 475, 222 N.W.2d 566 (1974). There was also substantial evidence presented that the regional park was planned and designed to accommodate many more users than passive open space. The new watermain would greatly facilitate the provision of water to accommodate these users.

In several cases dealing with land use and zoning, the Minnesota Supreme Court has held the market value of property must be established with reference to current permissible uses. *See City of St. Paul v. Rein Recreation, Inc.,* 298 N.W.2d 46, 48 (Minn.1980); *State v. Pahl,* 254 Minn. 349, 356, 95 N.W.2d 85, 90 (1959). The rationale for this is plain. Such restrictions limit the use to which a property may be put and, as a consequence, the amount a willing buyer will pay for such land is limited. The County insists the same rationale should apply in this case.

If evidence establishes a special benefit attributable to the improvement, the Township must then show the benefit increases the market value of the property. *See Carlson–Lang Realty Co.,* 307 Minn. at 369, 240 N.W.2d at 519. The increase in market value is determined by what a willing buyer would pay a willing seller for the property before and then after the improvement has been completed. *Dosedel v. City of Ham Lake,* 414 N.W.2d 751, 756 (Minn.App.1987).

However, when assessing government units, problems arise when strictly considering the property as currently used.' Government property upon which is located courthouses, school buildings, or land which is restricted for park purposes will normally not increase in *market* value as improvements are made. That is why the legislature passed Minn.Stat. § 435.19 which provides for special assessments against government property for special benefits to the same extent that such an assessment could be made *if* the *property were privately owned.* If the property is viewed as public property, as done in this case, the statute is meaningless. We therefore look not at present use, but at an imagined use, which in this case means we value the land as if it were suburban residential, as is the surrounding private property. Any other approach would simply mean that private citizens whose land is included in a special assessment, where government property is located, would pay an exorbitant amount for their share of the improvement. This would in many instances make the project unfeasible. That is precisely what the legislature intended to prevent.

The Township also argues the County should be equitably estopped from contesting these assessments and the County waived its rights to contest the assessment. Because we have rejected the County's challenge to the assessments, we need not address these arguments.

## DECISION

Reversed.