691 F.2d 241
 1982-83 Trade Cases 64,991
 DUNN & MAVIS, INC., an Indiana corporation; Dependable
Mounting Corporation, a Michigan corporation; Tn't, Inc., an
Indiana corporation; Paul A. Mavis, an individual; and
Geoffrey O. Mavis, an individual, Plaintiffs-Appellants,
v.
NU-CAR DRIVEAWAY, INC., a Michigan corporation; North
American Auto Transport, Inc., a Michigan corporation; City
Car Releasing Company, a Michigan corporation; City Car
Terminal, Inc., a Michigan corporation; and Robert J.
Chambers, an individual, jointly and severally, Defendants-Appellees.
 No. 81-1448.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 4, 1982.
Decided Oct. 18, 1982.
 
 Erwin C. Ziegelman, Donovan, Hammond, Carson, Ziegelman, Roach and Sotiroff, Dennie M. Rauss, Detroit, Mich., for plaintiffs-appellants.
 Barry M. Rosenbaum, Goldstein, Serlin, Grass, Eserow, Joel H. Serlin, Southfield, Mich., for defendants-appellees.
 Before ENGEL and MERRITT, Circuit Judges and PECK, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, Dunn & Mavis, Inc., and its affiliates, providers of auto transport services in the Detroit metropolitan area from auto assembly plants to railheads and other distribution points, allege that defendant, Nu-Car Driveaway, Inc., a competitor, and its affiliates, conspired with Chrysler Motors to drive plaintiffs out of business. The conspirators allegedly achieved this end by replacing Dunn & Mavis with Nu-Car as sole transporter at the Warren, Michigan, Chrysler plant, knowing that the loss of Chrysler's transport business would destroy plaintiffs' business. Plaintiffs assert violations of Sections 1 and 2 of the Sherman Act. Their major argument is that "competitor inspired termination is not susceptible to 12(b)(6) dismissal" because it is a group boycott and a per se violation of the Act. The basic question presented is whether in the absence of otherwise actionable allegations of restraint of trade or monopolization an agreement or "conspiracy" between a single seller of transportation services (Nu-Car) and a single buyer (Chrysler) to drive a competing seller (Dunn & Mavis) out of business by no longer buying his services constitutes a group boycott in violation of the Act. We agree with District Judge Gilmore that the case is analogous to Ace Beer Distributors Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir. 1963), and affirm his decision dismissing the complaint for failure to state a cause of action.
 
 
 2
 The complaint alleges the following: Plaintiffs have transported trucks for Chrysler "in excess of 30 years" and contracted to work "exclusively for Chrysler" and "to have sufficient equipment and facilities to handle Chrysler's demand during peak periods." In the spring and summer of 1979 Chrysler and Nu-Car "engaged in discussions in which they conspired and made plans for the termination of Dunn & Mavis" in order "to eliminate existing competition in the relevant transportation market and to destroy existing price competition." Count I alleges that this conduct violates section 1 of the Sherman Act, and Count II alleges that the conduct constitutes, "an attempt to monopolize ... the Chrysler Releasing Market in violation of section 2 of the Sherman Act." Counts III through IX allege breach of contract, tortious interference and various other pendent state law claims.
 
 
 3
 In dismissing the complaint, District Judge Gilmore relied on the following language from Ace Beer, supra, a case in which a brewery changed beer distributors and this Court affirmed the dismissal of the old dealer's complaint:
 
 
 4
 A manufacturer has a right to select its customers and to refuse to sell its goods to anyone, for reasons sufficient to itself. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992. A refusal to deal becomes illegal under the Act only when it produces an unreasonable restraint of trade, such as price fixing, elimination of competition or the creation of a monopoly.
 
 
 5
 ....
 
 
 6
 Unless it can be said that the refusal to deal with plaintiff had the result of suppressing competition and thus constituted "restraint of trade" within the meaning of Section 1 of the Sherman Act, there is no violation of the Act.
 
 
 7
 318 F.2d at 286-87. The District Judge in the instant case pointed out that no invalid collective refusal to deal or group boycott is alleged since the complaint does not assert that a group of competitors on the same level coerced, suggested or agreed that Chrysler terminate plaintiffs. The Court dismissed the monopolization count on the ground that Chrysler's business, labeled in the complaint as the "Chrysler Releasing Market," does not itself constitute a relevant line of commerce since there is no claim that Chrysler "controls the market" in automobiles or trucks: "If you were to follow the Plaintiff's reasoning on this point to its logical conclusion, every time an individual consumer chose the services of a particular company, a monopoly would be established." (App. 167-68.) The Court declined to pass on the pendent state claims, dismissing them without prejudice.
 
 
 8
 The District Court's reasoning is correct. The complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose. When stripped to its essential allegations, the complaint does no more than state plaintiffs' commercial disappointment at losing Chrysler's patronage-the recurrent case of the jilted customer, dealer or supplier who loses a manufacturer's franchise and accuses the manufacturer and the new suitor of attempting to monopolize something. See Burdett v. Altec Corp., 515 F.2d 1245, 1249 (5th Cir. 1975).[1] An agreement promising a new dealer the old dealer's business is presumptively reasonable, and the old dealer does not have an antitrust claim unless the conduct is incident to an otherwise unlawful arrangement or an attempt to monopolize an identifiable market. A contrary rule limiting a buyer's right to displace an old seller in favor of a new one would undermine the principle of competition the antitrust laws are designed to secure.
 
 
 9
 The District Court was justified in dismissing the claim summarily on the pleadings. The discussions between Chrysler and Nu-Car and the agreement between them alleged in the complaint are lawful under the Sherman Act. The "monopolization" alleged in count II is the "monopolization" of Chrysler's business. Chrysler certainly is entitled to hold discussions and form contracts regarding its transport requirements. An allegation of exclusive dealing by Chrysler with one supplier is not a sufficient claim of monopoly in a line of commerce, absent some allegation of monopolization by Chrysler of some product or service market.[2]
 
 
 10
 Plaintiffs rely heavily on two cases involving collective refusals to deal that were negotiated between a manufacturer and multiple dealers. In Com-Tel, Inc. v. Dukane Corp., 669 F.2d 404 (6th Cir. 1982), three dealers of a manufacturer's sound equipment conspired with the manufacturer whose policy was to permit intraband competition. Acting in concert, the three dealers agreed with the manufacturer that all would refuse to deal with the plaintiff, a price cutter. The Court found this conduct illegal as a collective refusal to deal or a group boycott. Similarly, in Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), a retail dealer convinced a group of retailers and manufacturers to refuse to deal with plaintiff. The court characterized the collective refusal as a per se violation of Section 1.
 
 
 11
 We have no such collective action here. In the instant case there was no allegation that Nu-Car acted in concert with other auto transport carriers to eliminate plaintiff from the market. Rather Nu-Car persuaded Chrysler to deal with it instead of with Dunn & Mavis.
 
 
 12
 The Second and Ninth Circuits have recently noted this same distinction between exclusive dealer agreements which eliminate a competing dealer and a collective refusal to deal among dealers or suppliers. See Oreck v. Whirlpool Corp., 579 F.2d 126 (2d Cir. 1978 en banc ) (approving agreement between manufacturer Whirlpool and dealer Sears not to sell vacuum cleaners to dealer Oreck); Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc., 637 F.2d 1376 (9th Cir. 1981) (upholding Fiat's refusal to grant dealership).
 
 
 13
 We recognize that there are a few decisions which are not distinguishable on the collective refusal to deal theory outlined above. However, in each case the conduct found to violate the antitrust laws involved termination of a dealer for cutting prices to consumers. For example, in Cernuto, Inc. v. United States Cabinet Corp., 595 F.2d 164 (3d Cir. 1979), the Court found a per se violation when a supplier at the request of one dealer simply terminated another dealer for price cutting. There are several other cases along the same line, which may be inconsistent with the Oreck and Ron Tonkin cases cited above, see, e.g., Trabert & Hoeffer, Inc. v. Piaget Watch Corp., 633 F.2d 477 (7th Cir. 1980) (jury award upheld arising from termination of price cutting watch dealer); Girardi v. Gates Rubber Company Sales Div., Inc., 325 F.2d 196 (9th Cir. 1963).
 
 
 14
 Price cutting is not a factor present in the instant case. We do not need to decide whether an agreement between a manufacturer and one dealer that the manufacturer will refuse to sell his brand to a price cutter in an industry where inter-brand competition exists is alone sufficient to bring the conduct within a category of per se violations of Section 1. Dunn & Mavis and Nu-Car were not retail dealers of Chrysler. They supplied transport services to Chrysler. The complaint contains no reference to price cutting. Indeed, lower transport prices would benefit Chrysler and would hardly be a reason for termination.
 
 
 15
 We therefore agree with Judge Gilmore that the complaint does not state a per se violation under Section 1 or a valid monopolization claim. Since the complaint does not allege facts suggesting that Chrysler's refusal to deal had any significant anti-competitive effect on the market, there is no rule of reason case alleged. Chrysler's substitution of one auto transport company for another at its Warren plant does not limit competition in any substantial sense. A contrary decision would limit without reason the normal principle that a buyer is entitled to choose among various sellers who offer competing products or services.
 
 
 16
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 [1]
 In this case, the Fifth Circuit issued a word of warning to the jilted dealer citing numerous cases:
 Lest any other former distributors succumb to the temptation of treble damages, we reiterate that it is simply not an antitrust violation for a manufacturer to contract with a new distributor, even if the effect of the new contract is to seriously damage the former distributor's business.
 515 F.2d at 1249.
 
 
 [2]
 For further development of this point, see Justice Stevens' opinion for the Seventh Circuit in Mullis v. ARCO Petroleum Corp., 502 F.2d 290 (7th Cir. 1974). The Court held that ARCO's termination of an oil distributorship during a time of acute shortage did not abridge the Sherman Act. The claim was that "the relevant market ... consists of the sale of ARCO petroleum products in the Lawrence County area." Id. at 296. The claim failed because there was no indication that ARCO had dominance or market power there. Justice Stevens explains the appropriate distinction as follows:
 Claims that refusals to deal were violative of § 2 have often failed because the plaintiff incorrectly assumed that proof of the so-called monopoly which a manufacturer has over his own product is tantamount to proof of dominance in an economic market. See, e.g., Bushie v. Stenocord Corp., 460 F.2d 116, 120-21 (9th Cir. 1972); Cal Distributing Co. v. Bay Distributors, Inc., 337 F.Supp. 1154, 1157-1159 (M.D.Fla.1971); South End Oil Co. v. Texaco, Inc., 237 F.Supp. 650, 655-656 (N.D.Ill.1965). On the other hand, courts which have been persuaded that such dominance exists have held refusals to deal violative of § 2. See, e.g., Otter Tail Power Co. v. United States, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Poster Exchange, Inc. v. National Screen Service Corp., 431 F.2d 334 (5th Cir. 1970), cert. denied, 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811.