803 F.2d 718
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES J. CARRAS; ROBERTA E. CARRAS, Plaintiffs-Appellants
v.
HULL & SMITH HORSE VANS, INC., a foreign corporation;
EUGENE HULL; JACKSON THOROUGHBRED FARM, INC., a foreign
corporation; EUGENE JACKSON; JULES PAOLI, II; JULES
PAOLI, III; EUGENE N. LABELLE; WILLIAM R. THOMPSON; LOUIS
PASQUIN; CLAIRE PASQUIN; PATRICIA SHANKLAND; SERGEANT J.
KING; EUGENE CASEY; SALLEE HORSE VANS, a foreign
corporation; THE ATTORNEY GRIEVANCE COMMISSION FOR THE
SUPREME COURT OF MICHIGAN; DORIS A. CHISHOLM; CROSS-TIE
HORSE VANS, INC., a Michigan corporation; and the
PENNSYLVANIA STATE RACING COMMISSION, Defendants-Appellees.
 No. 85-1105.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1986.
 
 BEFORE: jones and krupansky, Circuit Judges; and CELEBREZZE, Senior Circuit judge.
 Per curiam.
 
 
 1
 Plaintiffs-appellants James J. and Roberta E. Carras appeal the district court's judgment dismissing their action against the above-captioned defendants-appellees which alleged violations of 42 U.S.C. Sec. 1983 (1982), sections one and two of the Sherman Antitrust Act, 15 U.S.C. Secs. 1, 2 (1982), and state common law. In addition to contending that the district court erred in dismissing their action, the Carrases also claim on appeal that the district court erred in denying them leave to amend their complaint, that the district court judge should have disqualified himself, and that the lower court proceedings were so prejudicial as to deny them due process. We affirm.
 
 
 2
 James Carras, a Michigan attorney since 1956, entered the thoroughbred horse racing business in 1967 and with his wife Roberta (hereafter collectively "Carras") has been breeding thoroughbred race horses since 1973. In December 1975, Louis Pasquin allegedly shipped two horses belonging to Carras from Michigan to Delaware without Carras' consent using the carrier services of Sallee Horse Vans, Inc. In late 1977, Carras shipped all of his horses to Eugene Jackson of Jackson Thoroughbred Farms, Inc. ("Jackson's") for boarding. Jackson's allegedly failed to properly care for Carras' stock and turned Carras' account over to a collection agency on the basis of a purportedly false representation of debt owed by Carras. Carras contracted with Hull and Smith Horse Vans, Inc. ("Hull & Smith") to transport some of his stock from Jackson's to a farm in Maryland in July, 1978, but Hull & Smith did not perform the contract until October.
 
 
 3
 Presumably because of this delay, Carras' stock deteriorated in the hands of Jackson's. In addition, Carras has claimed that Hull & Smith failed to exercise proper care when transporting the horses. In early 1979, Hull & Smith was again contracted to move Carras' horses, this time from the possession of Jules Paoli II and Jules Paoli III in Maryland to Michigan. According to Carras, Hull & Smith failed to obtain the horse papers from the Paolis as instructed, and the Paolis fraudulently represented that Carras' best mare was too ill to travel and raced her instead. The Paolis were further charged with filing a false complaint of non-payment for services against Carras with race track stewards, causing the Pennsylvania State Horse Racing Commission to suspend Carras' racing privileges until he paid for boarding. This resulted in steward Edward Casey of the Michigan Racing Commission scratching a Carras horse from a race in Michigan. In January, 1980, Doris Chisholm of Cross-Tie Horse Vanning, Inc. arranged to transport two of Carras' horses, but the horses somehow ended up with Hull & Smith, which would not return the horses until Carras paid past bills. These incidents all relate to Carras' activity in the horse racing business.
 
 
 4
 In addition, in July, 1979, Louis and Claire Pasquin filed a complaint against James Carras with the Attorney Grievance Commission for the Supreme Court of the State of Michigan because Carras allegedly overcharged for the settlement of an estate. Eugene LaBelle and William Thompson initially reviewed the complaint, although the Pasquins' charges against Carras were later dismissed by the Commission. In February 1979, Sergeant J. King of the Michigan State Police allegedly slandered James Carras by telling the sister of a client that Carras was a poor attorney. Patricia Shankland, a court reporter, complained to the Michigan State Bar Grievance Board that attorney Carras had not paid her for services rendered and filed suit against Carras in June, 1977. Finally, Hull & Smith sued Carras in March, 1980 for the collection of horse boarding charges, eventually obtaining a judgment for over $20,000 against Carras in 1984.
 
 
 5
 Despite the seemingly isolated nature of these incidents, Carras alleged in his June, 1980 complaint that the acts of each defendant were part of a conspiracy to damage him in his legal profession, destroy his horse racing/breeding business, and impugn his reputation in violation of his civil rights, 42 U.S.C. Sec. 1983 (1982), and to monopolize and restrain trade in the horse racing business and legal profession in contravention of the Sherman Antitrust Act, 15 U.S.C. Secs. 1, 2 (1982). A magistrate's report recommended the dismissal of Carras' claims against all the defendants. The district court adopted this recommendation with slight modification in December, 1984, and judgment was entered dismissing Carras' action on January 2, 1985. This appeal ensued.
 
 
 6
 Nothing would be served by a detailed recitation of reasons supporting our affirmance of the district court's dismissal of Carras' action. Instead, we hold that the district court properly dismissed Carras' claims against all the defendants for the reasons set forth in the copiously researched magistrate's report of December 7, 1984, as adopted and supplemented by the district court's memorandum opinion and order of December 20, 1984. It is sufficient to note in summary that Carras' civil rights action against both the state agencies and the state officers sued in their official capacities was barred by the Eleventh Amendment, see, e.g., Kentucky v. Graham, 105 S. Ct. 3099, 3105 (1985); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100-02 (1984). His civil rights claims against the state actors were insufficient even if they were being sued in their individual capacities by virtue of Carras' failure to demonstrate how the acts of these officials rose to the level of constitutional violations, see, e.g., Paul v. Davis, 424 U.S. 693, 700 (1976); Havas v. Thornton, 609 F.2d 372, 374-75 (9th Cir. 1979). In addition, the section 1983 claims against the remaining, private defendants were fatally defective because Carras failed to plead facts showing a "meeting of the minds," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970), or a "general conspiratorial objective," fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983), necessary to demonstrate a colorable claim of state action, see, e.g., Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155 (1978); 42 U.S.C. Sec. 1983 (1982), by showing that the private defendants were "jointly engaged" with state officials, Dennis v. Sparks, 449 U.S. 24, 27-28 (1980), to deprive Carras of his civil rights. See also Place v. Shepherd, 446 F.2d 1239, 1244 (6th Cir. 1971); Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1971). Regarding Carras' antitrust claims, his conclusory allegations of a conspiracy to restrain trade in the horse racing business and legal profession were insufficient to state a cause of action under section 1 of the Sherman Antitrust Act, see, e.g., Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc., 691 F.2d 241, 243 (6th Cir. 1982), and the complaint failed under section 2 of the Act due to its complete absence of pleaded facts defining the relevant market, see, e.g., Dunn & Mavis, 691 F.2d at 244; Mullis v. Arco Petroleum Corp., 502 F.2d 290, 295-97 (7th Cir. 1974). Moreover, the defendant state regulatory agencies were immune from suit under the Act by virtue of the state action exception. See, e.g., California Retail Liquor Dealers Association v. Midcal Aluminum, Inc., 445 U.S. 97, 105 (1980); Parker v. Brown, 317 U.S. 341 (1943). Finally, Carras' pendant state claims were properly dismissed under the authority of United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966).*
 
 
 7
 Accordingly, the district court's judgment dismissing Carras' action is AFFIRMED.
 
 
 
 *
 In light of and in addition to the foregoing, we find Carras' remaining contentions on appeal to be without merit