**COASTAL TRANSFER CO., a California Corp., Plaintiff–Appellant,**

**v.**

**TOYOTA MOTOR SALES, U.S.A., a California Corp.; Toyota Motor Distributors, Inc., a California Corporation, Defendants–Appellees,**

**and**

**Direct Delivery Service, Inc., a California Corp., Defendant.**

**No. 86–5839.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1987.

Decided Nov. 30, 1987.

Joel R. Bennett, Los Angeles, Cal., and Eugene Crew, San Francisco, Cal., for plaintiff-appellant.

Allyn O. Kreps and James H. Berry, Jr., Los Angeles, Cal., for defendants-appellees.

Before FLETCHER, FARRIS and O'SCANNLAIN, Circuit Judges.

FARRIS, Circuit Judge:

Coastal Transfer Company, a California Corporation, initiated this action against Toyota Motor Sales, U.S.A., a California Corporation; Toyota Motor Distributors, Inc., a California Corporation; and Direct Delivery Service, Inc., a California Corporation. The facts are straightforward and undisputed. For several years, Toyota employed the services of Coastal to deliver parts to Toyota's dealers. In 1981, Toyota discharged Coastal with proper notice and hired Direct to make the same deliveries.

Coastal initiated this action in 1982 in the U.S. District Court for the Central District of California, alleging that those facts constituted an antitrust violation. Coastal's Third Amended Complaint, filed in 1984, prayed for general damages according to proof and punitive damages in the amount of $50,000,000.00. In an order of June 5, 1984, the district court dismissed the suit against the dealers in its entirety. The court also dismissed all pendent state claims against Toyota and Direct but declined to dismiss the antitrust claims against Toyota and Direct because the court believed that this circuit is reluctant to dismiss antitrust claims at the pleading stage. On October 22, 1984, the court set the discovery deadline for August 31, 1985. Toyota proceeded with its preparations but Coastal apparently took no action until August 5, 1985, when it moved to extend the discovery cutoff by six months. The motion was denied but the cutoff was extended to September 30, 1985. The court also fixed October 31, 1985 as the date for filing motions for summary judgment.

Toyota moved for summary judgment on October 31, 1985. In its Memorandum of Points and Authorities, along with supporting affidavits, Toyota alleged that:

(1) Coastal, a common carrier regulated by the California Public Utilities Commission, made local deliveries for Toyota from the mid–1970's through February, 1981. "Coastal's relationship with Toyota was merely that of a common carrier to a shipper; at no time did Coastal have a formal contractual relationship with Toyota."

(2) Toyota "became dissatisfied with Coastal's service and concerned about Coastal's financial stability" in 1980. When conferences and communications between Toyota representatives and Coastal's principals failed to resolve these perceived problems, Toyota terminated its relationship with Coastal and hired Direct as its local carrier.

(3) Toyota's substitution of Direct for Coastal resulted solely from Toyota's dissatisfaction with Coastal's work, not

> from any agreement with or coercion by Direct Delivery.... [N]o one from Toyota intended that Direct Delivery obtain any sort of monopoly or market power, or that competition be restrained in any respect. Any such action by Toyota would have been utterly irrational, since a restraint of competition in any market in which Toyota purchased services could only redound to Toyota's detriment.

A hearing on Toyota's motion for summary judgment was set for November 25, 1985. Coastal requested and received a continuance of the hearing to January 6, 1986. On the deadline date set for the filing of opposition papers, Coastal's counsel filed instead a motion to withdraw as counsel. In their supporting memorandum, Coastal's attorneys stated that Coastal had failed to cooperate with them in the preparation of opposition papers. Specifically, counsel alleged that Coastal's principals had not provided essential information to Coastal's expert and had not appeared at the expert's offices for a scheduled meeting on December 9, 1985. Neither the memo nor the supporting declaration by Joel R. Bennett, co-counsel for Coastal, identified the expert by name.

The court granted Toyota's motion for summary judgment on December 30, 1985. On January 13, 1986, the court also granted leave to Bennett and Harold J. Tomin, Coastal's counsel, to withdraw.

On January 27, 1986, Bennett and Tomin reappeared as Coastal's counsel and filed an *ex parte* application under Fed.R.Civ.P. 60 to set aside the summary judgment. That motion was denied. Following entry of final judgment on February 4, 1986,

Coastal's counsel moved for a new trial under Rule 59(a)(2). In the supporting memorandum, Coastal claimed that it had only recently learned that its expert, Robert Walters, had erred in his original analysis of data concerning the legality of the rates charged by Direct at the time that Toyota switched carriers. The memorandum stated that Walters, a traffic consultant, had informed Coastal on November 27, 1985 that "Direct's relationship with Toyota was in accordance with applicable P.U.C. regulations and tariffs" in 1981, the year in which Toyota hired Direct. Walters stated in an affidavit that he had informed Coastal's counsel that the relationship between Toyota and Direct was illegal, but that he had mistakenly advised that the illegality took place in 1980, rather than 1981. In a separate affidavit, one of Coastal's attorneys stated that had Walters not erred, he would have sought further extensions of the discovery cutoff date and would have sought to depose Toyota's expert.

After a hearing, the district court denied Coastal's motion for a new trial and imposed sanctions on Coastal and its counsel under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. The court reasoned, first, that "the revised testimony of [Coastal's] retained expert ... does not appear to be 'new' evidence within the meaning of Rule 59 [because] Coastal Transfer has possessed the information upon which Walters bases his opinion since before defendants moved for summary judgment." Second, the court stated that Coastal had failed to exercise the requisite due diligence in attempting to discover Walters' mistake. Third, Coastal had not shown how Walters' testimony could alter the result in the action. The court ordered that Coastal and its two law firms pay defendants' attorneys' fees in the amount of $5,000.00.

By any measuring rod, this appeal is frivolous. In well reasoned and well written dispositions, two district court judges pointed out to Coastal the defects in its approach. Whether we limit our review to the appeal from the denial of the Rule 59 and 60 motions as we must or whether as

Coastal urges we reverse denial of those motions and reach the merits, the result is the same. There is *no* basis in law or fact for this action.

Coastal contends that Toyota's termination of Coastal and hiring of Direct amounted to an illegal agreement between Coastal and Direct, in violation of the Sherman Act. At the threshold, Coastal claims that this conduct merits *per se* treatment under Section One of the Sherman Act, rather than Rule of Reason analysis, because the actions of Toyota and Direct reflected an illegal boycott or a refusal to deal. On the basis of this characterization of the facts, Coastal then argues that it was not required to come forward with evidence of anticompetitive behavior or anticompetitive intent on the part of the defendants in order to survive a motion for summary judgment.

■ Coastal is wrong in all respects. Toyota's decision to replace Coastal with a new carrier is precisely the type of competitive activity that the antitrust laws are designed to protect. The Sherman Act distinguishes "between exclusive dealer agreements which eliminate a competing dealer and a collective refusal to deal among dealers or suppliers." *Dunn & Mavis, Inc. v. Nu–Car Driveaway, Inc.*, 691 F.2d 241, 244–45 (6th Cir.1982). While the latter are condemned *per se* because of their lack of any redeeming virtue, *see Klor's v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), this case falls in the former category. Because of the clear benefits to a competitive economy of permitting firms to choose with whom to deal, "exclusive dealer agreements" of the type at issue here are scrutinized under the Rule of Reason.

■ In order to survive a motion for summary judgment in a Rule of Reason case, the antitrust plaintiff must produce evidence of

1) an agreement among two or more persons or distinct business entities;

2) which is intended to harm or unreasonably restrain competition; and

3) which actually causes injury to competition.

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1296 (9th Cir.), *cert. denied*, 464 U.S. 916, 104 S.Ct. 280, 78 L.Ed.2d 259 (1983).

■ Coastal's claim fails this test on a number of counts. First, Coastal presented no evidence that the agreement between Toyota and Direct was motivated by a desire to curtail competition. On the contrary, such an intention on the part of Toyota would have been illogical because a restriction on competition in the parts delivery market would have raised prices in a market in which Toyota purchased services. Second, Coastal produced no evidence that the agreement between Toyota and Direct adversely affected competition. When reduced to its essentials, Coastal's claim "does no more than state [its] commercial disappointment at losing [Toyota's] patronage—the recurrent case of the jilted ... supplier who loses a manufacturer's franchise and accuses the manufacturer and the new suitor of attempting to monopolize something." *Dunn & Mavis*, 691 F.2d at 243–44.

■ In addition, Coastal's contention that the district court should have reopened the case when Coastal informed the court of the mistake made by Coastal's expert is without merit. We review denials of motions under Fed.R.Civ.P. 59 and 60 for abuse of discretion. *Thompson v. Housing Authority of the City of Los Angeles*, 782 F.2d 829, 832 (9th Cir.) *cert. denied*, — U.S. —, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986); *Robins v. Harum*, 773 F.2d 1004, 1006 (9th Cir.1985).

In order to establish an abuse of discretion, Coastal must make three showings. First, Coastal must establish that the revised testimony of its expert constituted "newly discovered evidence" within the meanings of Rules 60(b)(2) and 59. Second, Coastal must have exercised "due diligence" to discover this evidence. Third, the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case.

Coastal fails to meet any of these three criteria. On the first point, Coastal's argument falls short because the evidence upon which the expert's testimony was based had been in Coastal's possession since the start of litigation. Evidence is not "newly discovered" under the Federal Rules if it was in the moving party's possession at the time of trial or could have been discovered with reasonable diligence. *Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir.1963), *cert. denied*, 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964); *accord Area Transportation Authority v. Missouri*, 640 F.2d 173, 175 (8th Cir.1981). *See also* 11 Wright & Miller § 2859 (1973) ("Under both rules [59 and 60], if [the evidence] was in the possession of the party before the judgment was rendered it is not newly discovered ..."). This fact of possession also makes clear that Coastal did not use due diligence to discover its expert's error. The fact that Walters analyzed data from the wrong year should have been apparent to anyone familiar with the date of Coastal's termination by Toyota.

■ In any event, the expert testimony, even if produced in a timely fashion, would not have propelled Coastal over the hurdle of summary judgment. By Coastal's own account, Walters' revised testimony alleged only that the rates charged by Direct for shipments during the months of April and May in 1981 had not been adopted in a tariff filed under applicable P.U.C. regulations. Such an allegation falls far short of discharging Coastal's burden, as one of the cases on which Coastal relies demonstrates. In *Western Concrete Structures Co. v. Mitsui & Co. (U.S.A.), Inc.*, 760 F.2d 1013 (9th Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985), we held that in certain circumstances, below-tariff pricing may serve as a surrogate for below-cost pricing for purposes of establishing a Section One violation. Walters' testimony, however, did not even address the question of whether the rates were below-tariff or not; his declaration merely stated that any traffic that Direct might have handled for Toyota during those two months when there had been no filed tariff "... would

have been hauled at an illegal rate." Moreover, as *Western Concrete* makes clear, a showing of below-tariff or below-cost pricing does not relieve the antitrust claimant of the burden of producing evidence of anticompetitive intent and anticompetitive effects. *Id.* at 1016–17.

■ We affirm the Rule 11 sanctions awarded by the trial court. In addition, we award double costs and attorney's fees on appeal. We recognize that "an appeal that lacks merit is not always frivolous.... Sanctions are appropriate when the result of the appeal is obvious and the arguments of error are wholly without merit." *Grimes v. Commissioner*, 806 F.2d 1451, 1454 (9th Cir.1986).

All of the arguments that Coastal makes on appeal, like the arguments that it raised before the district court, are frivolous. The law is well settled, for example, that dealer termination cases are subject to the Rule of Reason and require showings of anticompetitive intent and anticompetitive effects. Coastal's arguments under Rule 59 and 60 fail to meet even one of the three requirements for a finding of discretionary abuse. And Coastal's allegation that the district court erred in dismissing the complaint against approximately sixty southern California Toyota dealers ignores United States Supreme Court precedent. According to Coastal, its allegation that Toyota coerced its dealers to stop using Coastal's services stated a claim under the Sherman Act. The Supreme Court, however, has stated the contrary. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984); *see* 7 P. Areeda, Antitrust Law ¶ 1446e (1986).

Moreover, we may consider Coastal's "history of repetitive and meritless claims, the needless expenditure of judicial time, and our intent to deter further frivolous appeals." *Trohimovich v. Commissioner*, 776 F.2d 873, 876 (9th Cir.1985). Coastal did not hire an expert to substantiate its antitrust claims until more than two years after filing a complaint. It conducted no discovery during the ten-month period set

for discovery and then sought repeated delays to make up for lost time. It failed to file papers opposing Toyota's timely motion for summary judgment, but then appeared after the entry of judgment urging first the district court, then this court, to set aside the judgment because its expert made a mistake. Five years is time enough to indulge Coastal's lackluster pursuit of this litigation.

AFFIRMED.