**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT



FILED

MAY 11 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: LIFELOCK, INC. SECURITIES LITIGATION, | No.    15-16885 |
| ──────────────────────────── | D.C. No. 2:14-cv-00416-SRB |
| CHET K. GRAY; CITY OF HALLANDALE BEACH POLICE AND FIREFIGHTERS' PERSONNEL RETIREMENT FUND, | MEMORANDUM* |
| Plaintiffs-Appellants, | |
| v. | |
| LIFELOCK, INC.; TODD DAVIS; CHRIS POWER, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted April 21, 2017
San Francisco, California

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  TROTT and IKUTA, Circuit Judges, and FABER,[**] District Judge.

This appeal arises from the district court's Fed. Rule Civ. P. Rule 12(b)(6) dismissal at the pleading stage of Plaintiffs' Second Amended Consolidated Class Action Complaint ("SCAC") against LifeLock and two of its senior officers for securities fraud, commonly known as "fraud on the market."  Judge Bolton also denied Plaintiffs' Motion for Relief pursuant to Fed. Rule Civ. P. 60(b), and their request for Leave to File a Third Consolidated Amended Class Action Complaint.

The facts and circumstances of this case are well-known to the parties. Therefore, we repeat them only as necessary to explain our decision.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## I

Because the Private Securities Litigation Reform Act of 1995 ("PSLRA") controls the resolution of this matter,[1] and because the pleading barriers it erects are unique, we begin with a review of case law.  We also take this side trip because counsel for the Plaintiffs allege that Judge Bolton engaged in prohibited factfinding and in essence usurped the rule of a jury and "tried the case" in the guise of

---

[**]     The Honorable David A. Faber, United States District Judge for the Southern District of West Virginia, sitting by designation.

[1]     15 U.S.C. § 78u-4 et seq.

applying the PSLRA — serious charges if true. But they are not. Judge Bolton did

no more than assiduously examine Plaintiffs' pleadings and all the reasonable

inferences they support to determine whether their complaint satisfied the rigorous

and unusual test mandated by Congress in this specialized area of the law. The

PSLRA required her to decide two central questions at the pleading stage: whether

the Plaintiffs sufficiently pleaded misstatements (or omissions) that "would have

been viewed by the reasonable investor as having significantly altered the 'total

mix' of information made available," Basic Inc. v. Levinson, 485 U.S. 224, 231–32

(1988) (quoting TSC Indus. v. Northway, Inc., 426 U.S. 438, 449 (1976)), and

whether, assessing all allegations in the complaint holistically, Plaintiffs pleaded a

strong inference of actionable misconduct, known as scienter, as the cases that

follow require.[2] See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308,

323 (2007).

> The heightened pleading requirements of the
> Private Securities Litigation Reform Act are an unusual
> deviation from the usually lenient requirements of federal
> rules pleading. In few other areas are motions to dismiss

---

[2] In addition to actionable misstatements or omissions and scienter, a Section 10(b) plaintiff must also establish "(3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2407 (2014) (quoting Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1192 (2013)).

3

for failure to state a claim upon which relief can be granted so powerful.  The various requirements are not satisfied merely by making a complaint long.  For a securities fraud case based on false statements to survive a motion, the pleading has to state particularized facts that, taken as a whole, raise a strong inference that defendants intentionally or with deliberate recklessness made false or misleading statements to investors.

Ronconi v. Larkin, 253 F.3d 423, 437 (9th Cir. 2001).

[R]ecklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct.  To repeat, recklessness in the 10(b) context is, in the words of the Supreme Court, a form of intentional conduct.  . . .

It is clear . . . that Congress sought to reduce the volume of abusive federal securities litigation by erecting procedural barriers to prevent plaintiffs from asserting baseless securities fraud claims.   In a joint statement, managers from the House and Senate declared that "Congress has been prompted by significant evidence of abuse in private securities lawsuits to enact reforms to protect investors and maintain confidence in our capital markets."   H.R. CONF. REP. 104-369, at 31.   The managers observed that plaintiffs routinely were filing lawsuits "against issuers of securities and others whenever there [was] a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer, and with only faint hope that the discovery process might lead eventually to some plausible cause of action[.]" They recognized that plaintiffs, by targeting "deep pocket defendants," could misuse the discovery process "to impose costs so burdensome that it [was] often economical for the victimized party to settle[.]"  In general, the conference report makes it clear that

4

> Congress designed the PSLRA to deter non-meritorious lawsuits by creating procedural barriers such as heightened pleading standards.

In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 977–78 (9th Cir. 1999) (first alteration added) (footnote omitted), abrogated on other grounds by Tellabs, 551 U.S. at 326.

> Because we believe Congress made it crystal clear that the PSLRA's pleading requirements were put in place so that only complaints with particularized facts giving rise to a strong inference of wrongdoing survive a motion to dismiss, we agree with the district court that when determining whether plaintiffs have shown a strong inference of scienter, the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs. District courts should consider all the allegations in their entirety, together with any reasonable inferences that can be drawn therefrom, in concluding whether, on balance, the plaintiffs' complaint gives rise to the requisite inference of scienter.

Gompper v. VISX, Inc., 298 F.3d 893, 897 (9th Cir. 2002).

## II

At the heart of the SCAC is a statement in LifeLock's 2013 Form 10-K related to its compliance with the Federal Trade Commission's 2010 Settlement Order ("FTC" "Order"). The Plaintiffs claim that LifeLock's statement is false and misleading when measured against its actual compliance with the Order. In particular, Plaintiffs argue that because the deliberate company practice of

5

"throttling" was not disclosed in the 2013 Form 10-K, the omission of a reference to this practice renders misleading LifeLock's opinion that it was in compliance with the FTC Order. We note parenthetically that absent from this case is any direct evidence of intentional wrongdoing, or scienter. Plaintiffs' case depends entirely upon inferences they ask us to draw.

The disputed 2013 Form 10-K statement makes the following declaration:

> On January 17, 2014, we met with FTC Staff, at our request, to discuss issues regarding allegations that have been asserted in a whistleblower claim against us relating to **our compliance with the FTC Order**. Following this meeting, we expect to receive either a formal or informal investigatory request from the FTC for documents and information regarding our policies, procedures, and practices for our services and business activities. Given the heightened public awareness of data breaches and (sic) well as attention to identity theft protection services like ours, it is also possible that the FTC, at any time, may commence an unrelated inquiry or investigation of our business practices and our compliance with the FTC Order. **We endeavor to comply with all applicable laws and believe we are in compliance with the requirements of the FTC Order.** We believe the increased regulatory scrutiny will continue in our industry for the foreseeable future and could lead to additional meetings or inquiries or investigations by the agencies that regulate our business, including the FTC.

(Boldface type added).

The district court concluded that the Form 10-K's reference to "our compliance" was "not misleading because it does not 'affirmatively create an impression' that LifeLock was actually in compliance with the FTC Order." Also, using the Supreme Court's decision in Ominicare, Inc. v. Laborers District Council Construction Industry Pension Fund, 135 S. Ct. 1318 (2015), as a guide,[3] Judge Bolton concluded that LifeLock's statement of belief regarding its "compliance" with the Order was neither a statement of fact nor an actionable opinion. Judge Bolton also concluded that:

> [e]ven if Plaintiffs have sufficiently alleged that Defendants knew LifeLock was sending out delayed alerts to certain customers, conclusory allegations that "Defendants flagrantly violated the terms of the [FTC] Order" are insufficient to demonstrate that Defendants knew or reasonably should have known that this practice violated the FTC Order. The SCAC does not contain sufficient factual allegations demonstrating that Defendants knew the extent of LifeLock's throttling practice or whether this practice was actually pervasive enough to put LifeLock in violation of the FTC Order.

To support its conclusions, the district court took judicial notice of LifeLock's entire 2013 Form 10-K filing, not just the portion contained in the

---

[3] In a recent opinion, we held that "the three standards for pleading falsity of opinion statements articulated in [Omnicare] apply to Section 10(b) and Rule 10b-5 claims." City of Dearborn Hts. Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., No. 14-16814, — F.3d —, 2017 WL _____, at *_ (9th Cir. May 5, 2017).

SCAC. In the filing, LifeLock revealed (1) negative information concerning the effect of the rapid growth on its services, (2) problems managing its growth, and (3) that its business could be harmed (i) because of customer service problems and (ii) because it might not be able to update its technology to keep up with its growth. Considered in the light of Lifelock's warning that the FTC and other regulatory agencies might open an investigation into its compliance with the Order, the court concluded that "Defendants' failure to specifically disclose their knowledge of unsent or delayed alerts [did not] render[] the opinion statement 'misleading to a reasonable person reading the statement fairly and in context'" (quoting Ominicare, 135 S. Ct. at 1332). We agree with the district court's analysis.

Plaintiffs focus generically on what they say is missing from LifeLock's disclosures and argue that if you are going to say something, you must say everything, that your discussion must be "complete and accurate." This assertion is not entirely accurate. "Rule 10b-5 and Section 14(e) in terms prohibit only misleading and untrue statements, not statements that are incomplete." Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002) (emphasis in original). "No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not." Id.

Here, and in this context, we do not regard the facts allegedly omitted as materially affecting what was disclosed because a reasonable investor would not view those facts as changing the "total mix" of information available. Basic, 485 U.S. at 231–32. The district court did not misapply Supreme Court precedent or Ninth Circuit law.[4]

## III

Plaintiffs' operative complaint offered additional allegations they say viewed as a whole satisfy the PSLRA. We examine each in turn.

### A.

### The Analyst's Statement

The SCAC contains an allegation that a Deutsche Bank Market Research analyst who covered Lifelock offered his opinion to the effect that LifeLock "is engaging proactively with the FTC, as they have been since 2010, to stay compliant with FTC regulations." Plaintiffs claim that this statement falsely represents that LifeLock is in compliance with the Order. The district court correctly discounted this statement as a non-actionable statement made by a third

---

[4] For the same reasons, we find unpersuasive the Plaintiffs' identification of LifeLock's other SEC filings (the 2012 Form 10-K, the Forms 10-Q, and the 2014 Regulation FD Disclosure) as material misstatements or omissions.

party without any nexus to a LifeLock source. A statement made by a third party is actionable only when it "clearly originated" from the defendants. Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1235 (9th Cir. 2004).

## B.

## Payment Card Industry Data Security Standards ("PCI")

Plaintiffs alleged in the SCAC that LifeLock made false statements regarding its compliance with applicable PCI standards covering its products. The district court dissected these allegations in exquisite detail and concluded that the information supporting them — much of which came from confidential witnesses — fell short of satisfying the PSLRA.

Defendants never represented the Wallet application — the focus of Plaintiffs' allegations — as being compliant with PCI standards, and therefore did not make a misleading affirmative statement. Even if the Defendants' statements regarding its PCI Level 1 certification were misleading, we agree with the district court that "Plaintiffs have again failed to adequately plead that the statements were made with scienter." Peters's whistleblower complaint does not mention PCI standards or the Wallet application. And, as the district court noted with respect to the CWs, many of their statements "fail to demonstrate the level of detail required to establish personal knowledge of Defendants' alleged state of mind." We agree.

10

CW2's allegations do not relate to the Wallet application. CW4 at no point alleges that he informed Davis, Power, or other management that the Wallet application was not PCI compliant, and does not specify the basis for his personal knowledge that Defendants were aware of the noncompliance. "As a whole, the [SCAC's] plethora of confidential witness statements fail to create an inference of scienter more cogent or compelling than an alternative innocent inference." Zucco Partners, LLC v. Digimarc Corp. 552 F.3d 981, 999–1000 (9th Cir. 2009).

## C.

### Technology and Services

In the SCAC, Plaintiffs averred that LifeLock's rosy statements about its technology and services were false and misleading and thus actionable misrepresentations. In particular, Plaintiffs allege that Defendants developed a deliberate policy of "throttling" alerts to certain customers in order to reduce the strain placed on its call centers, thereby rendering LifeLock's representations regarding its technology and services misleading, in violation of the FTC Order.[5]

---

[5] We reject Plaintiffs' reliance of LifeLock's "inherently aspirational" Code of Business Ethics and Conduct as a threshold matter. See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1275 (9th Cir. 2017).

11

However, as the district court noted, LifeLock in its 2013 Form 10-K also specifically disclosed that it had experienced substantial growth which has "place[d] a strain on [its] operational, financial, and management infrastructure" and warned that its "failure to effectively manage growth could have a material adverse effect on [its] business . . . [and] operating results." We agree with the district court that given the total mix of information, reasonable investors would not be misled regarding the potential for service limitations, including constraints in responding to alerts, and that no reasonable investor would interpret LifeLock's statements as promising perfect service. Accordingly, we agree with the district court's decision to discount Plaintiffs' allegations.

## D.

### Advertisements

LifeLock's advertisements which Plaintiffs believe supports their claims did not appear in this case until the failure of their original pleadings — and for good reason. Notwithstanding Plaintiffs' energetic arguments in their brief to the contrary, these advertisements add nothing to their cause. Moreover, their arguments are based on unreflective "quotation mining" from case law, not thoughtful analysis.

To see these advertisements is to understand why they are not probative of securities fraud.

The first ad is a simple descriptive chart checking off LifeLock's "Types of Protection" and comparing them against "Credit Monitoring," "Do It Yourself," and "Credit Card Protection." The notion that this type of chart has any potential to influence investors is facetious.

The second ad[6] describes LifeLock's membership benefits and says its "identity theft protection helps proactively safeguard your credit." This passive ad is no more actionable in this context than the first.

Finally, LifeLock said on its website that it takes "fast action" to alert its subscribers as to possible identity theft.

These three ads <u>might</u> have some probative value in an action based on consumer protection laws, but they have none in a case alleging investor fraud. These ads hardly resemble the "detailed drug advertisements in sophisticated

---

[6] The reproduction of this ad in Plaintiffs' Excerpt of Record is illegible without a magnifying glass. We remind counsel that if they expect us to read their submissions, the submissions must be legible. This failure to supply us with legible excerpts is a common problem. Counsel pay close attention to their briefs, but not to their excerpts — which is where briefs are supported by evidence. Farming out the production of an excerpt to a person not skilled in the process is a mistake.

medical journals" considered by the Second Circuit in In re Carter-Wallace, Inc. Securities Litigation, 150 F.3d 153, 154 (2d Cir. 1998).

Moreover, the SCAC failed to describe the publications in which the challenged advertisements appeared or whether they "appeared in publications reasonably used by market professionals to evaluate LifeLock stock." See also SEC v. Rana Research, Inc., 8 F.3d 1358, 1362 (9th Cir. 1993).

Finally, the SCAC lacks any information tending to show that either Davis or Power knew these ads were false or misleading when published.

## E.

### Whistleblower Complaints

Plaintiffs take issue with the manner in which LifeLock revealed "whistleblower complaints" against it, claiming that LifeLock covered up how many there were. However, the district court noted that while LifeLock's revelations did not

> disclose the exact number of whistleblower complaints filed against [it], they were not plausibly misleading because LifeLock disclosed in its 2013 Form 10-K that "there ha[d] been a recent increase in whistleblower claims made to regulatory agencies, including whistleblower claims made by former employees, which [LifeLock] believe[d] w[ould] likely continue."

We agree with the district court's analysis.

14

**F.**

**Sarbanes-Oxley ("SOX")**

Plaintiffs' tendered Davis's and Power's quarterly SOX certifications as demonstrative of scienter. We disagree. Defendants' Sarbanes-Oxley certifications "add nothing substantial to the scienter calculus" and, when viewed in context, "are not enough to create a strong inference of scienter and do not make [Plaintiffs'] otherwise insufficient allegations more compelling by their presence in the same complaint." Digimarc, 552 F.3d at 1004.

**G.**

**Controlling Persons Liability**

Count II of Plaintiffs' complaint alleged a violation of Section 20(a) of the Exchange Act. As the district court correctly said, that section, which provides for liability for "controlling" persons, requires a predicate violation of Section 10(b), See 15 U.S.C. § 78t(a); In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1052 (9th Cir. 2014). Because no Section 10(b) violation has been adequately alleged in the SCAC, Count II has no merit.

**IV**

After examining the record, the transcripts of the hearings given to counsel, Judge Bolton's written Orders dated December 17, 2014; July 21, 2015; and

September 18, 2015, and both parties' briefs, and collectively all the facts alleged in the SCAC, see Tellabs, 551 U.S. at 323, we conclude that her work was free from error and fully supported by the law. In other words, we arrive independently at the same conclusion: "The SCAC does not adequately allege that the statements at issue were either misleading or made with scienter to violate Section 10(b) or Rule 10b-5."

As for Plaintiffs' pending Motion for Leave to Amend, the court said, "Plaintiffs' response does not indicate that further amendment would cure the deficiencies identified, [and] further leave to amend is not warranted." Especially given that the district court had previously afforded Plaintiffs an opportunity to cure their pleading deficiencies, we agree. See Rubke v. Capitol Bancorp Ltd, 551 F.3d 1156, 1167 (9th Cir. 2009).

## V

After the district court dismissed Plaintiffs' SCAC and denied their request to amend yet again, Plaintiffs filed a Motion for Relief pursuant to Fed. Rule Civ. P. 60(b) and for leave to file a Third Amended Class Action Complaint. The basis for their request was the filing by the FTC of a contempt motion against LifeLock for non-compliance with the Order. Plaintiffs' grounds were that the new FTC

action constituted "surprise" and "newly discovered evidence" under Fed. Rule Civ. P. 60(b)(l) and 60(b)(2).

The district court denied both requests. The court concluded that Plaintiffs were not "surprised" by the FTC's new case because they were well aware at least five months before the SCAC was dismissed of LifeLock's continued entanglement with the FTC about compliance with the Order. LifeLock's Forms 10-K between 2012 and 2014 made substantial public disclosures about its continuing problems and jeopardy. We agree with the district court's conclusion, and in any event, the court's disposition of this issue was not an abuse of discretion.

The court also concluded that Plaintiffs' "new evidence" was not likely to have changed the result of their case.

> Although the initiation of the FTC action may indicate that LifeLock was not, in fact, in compliance the FTC Order, Plaintiffs have not persuasively shown how this evidence demonstrates that Defendants' statements alleged in the SCAC were false or materially misleading, particularly in light of Defendants' numerous negative disclosures. Because Plaintiffs have not met their burden of convincing the Court that the initiation of the FTC's action against LifeLock "would have been likely to change the disposition of the case," Plaintiffs are not entitled to relief under Rule 60(b)(2).

We agree.  See Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211 (9th Cir. 1987).

Because Plaintiffs failed to establish grounds for relief under Rule 60(b), the court denied their motion to amend.  The court's ruling was correct.  See Lindauer v. Rogers, 91 F.3d 1355, 1357 (9th Cir. 1996).

## VI

Federal securities laws do not protect investors from quality control problems, service lapses, or management miscues.  See Gaines v. Haughton, 645 F.2d 761, 799 n.33 (9th Cir. 1981) (federal securities laws do not provide a cause of action for stockholders who may have been managed by mere corporate mismanagement), overruled on other grounds by In re McLinn, 739 F.2d 1395 (9th Cir. 1984) (en banc); Digimarc, 552 F.3d at 1006 (the facts alleged by the Plaintiffs simply indicated that management was overwhelmed).

**AFFIRMED.**